[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1357 
J.B. Hunt Transport, Inc. ("J.B. Hunt"), appeals from a judgment based on a jury verdict in favor of Joseph A. Credeur. Credeur alleged in his complaint that on the evening of January 29, 1991, an 18-wheel tractor-trailer rig operated by an agent of J.B. Hunt negligently and/or wantonly made an unlawful lane change in an attempt to enter the northbound lane of Interstate Highway 65 from the eastbound lane of Interstate Highway 10 in Mobile County. Credeur, an employee of Sam Broussard Trucking Company, who was also driving an 18-wheel tractor-trailer, alleged that, in an effort to avoid a collision with the J.B. Hunt truck, he caused his own truck to leave the road and overturn, and he alleged that in the accident he sustained permanently disabling injuries. The truck that Credeur alleged made the unlawful lane change did not stop at the accident scene. Credeur testified that J.B. Hunt's name and distinctive paint scheme were painted on this truck.
The trial court entered a summary judgment in favor of J.B. Hunt, on the grounds that Credeur had failed to show that J.B. Hunt owned the vehicle involved in the accident; however, this Court reversed that judgment and remanded for a trial. SeeCredeur v. J.B. Hunt Transport, Inc., 655 So.2d 933 (Ala. 1994) (Credeur I). At trial, the jury awarded Credeur $500,000. J.B. Hunt appeals, arguing that (1) Credeur failed to present substantial evidence that J.B. Hunt owned the tractor he alleged caused the accident; (2) the trial court abused its discretion by limiting some of J.B. Hunt's attempts to impeach Credeur during cross-examination; (3) the trial court erred in refusing to allow J.B. Hunt to introduce evidence of Credeur's workers' compensation settlement; (4) Credeur failed to present substantial evidence that the accident caused his alleged future losses for which the jury was asked to award future damages; and (5) the verdict was excessive. We affirm the trial court's judgment.
 I. Ownership of the Tractor-Trailer Rig
A. Applicability of the Barber Rule
J.B. Hunt's argument that Credeur failed to present sufficient evidence for a jury determination of the issues is actually in part an argument that Barber Pure Milk Co. v.Holmes, 264 Ala. 45, 84 So.2d 345 (1955), which we held inCredeur I to be the controlling case law on the issue of evidence of ownership of the vehicle causing the accident, should not control. In Credeur I, this Court applied the principle of Barber, in which this Court stated that "the fact that the defendant's name was painted or inscribed in some manner on the motor vehicle which inflicted the injury sued for raises a presumption, or is prima facie evidence, that the defendant owned [the] vehicle, and that the driver was using it in [the] defendant's behalf." Id., 264 Ala. at 54,84 So.2d at 352. In Credeur I, this Court also noted the fact that, at the time of the accident, J.B. Hunt operated approximately 350 tractors and over 4,000 trailers out of its Atlanta, Georgia, terminal. J.B. Hunt could not show that one of the trucks was not involved. Accordingly, this Court reversed and remanded for trial.
In Credeur I, J.B. Hunt did not attempt to distinguish Barber
based on the type of vehicle involved, but, at trial and on this appeal, J.B. Hunt has asserted that Barber is inapplicable because the truck involved in Barber was a self-propelled vehicle, rather than a tractor-trailer. This fact is significant, J.B. Hunt argues, because trailers owned by one company can be towed by tractors of another company. J.B. Hunt argues that identifying a trailer with the design and paint scheme of J.B. Hunt should not be sufficient to allow the inference that J.B. Hunt owned and operated the tractor towing that trailer. J.B. Hunt admits that the majority of states have held that a plaintiff's testimony that a defendant's name appearing on a motor vehicle creates a prima facie case, or a rebuttable presumption, that the defendant owned the motor vehicle, but it argues that, for purposes of applying this principle, the term "motor vehicle" does not include a tractor-trailer. *Page 1359 
J.B. Hunt points to § 32-1-1.1(32), Ala. Code 1975, and to several cases, none from this jurisdiction. Based on that statute and those cases, it concludes that the court should have directed a verdict in its favor, arguing that Credeur's evidence did not establish ownership of the tractor-trailer.
Section 32-1-1.1(32) defines "motor vehicle" as "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails." J.B. Hunt argues that a trailer, not being self-propelled, cannot be included in the definition of "motor vehicle." Accordingly, the argument proceeds, any identifying insignia or markings on a trailer are not identifying insignia or markings on a "motor vehicle"; therefore, J.B. Hunt says, Credeur has not made a prima facie
showing that J.B. Hunt owned the vehicle involved in the accident. Regardless of how the Alabama Code defines "motor vehicle" for purposes of Title 32, J.B. Hunt cites no compelling authority for concluding that, for purposes of the rule applied in Barber, the term "motor vehicle" does not include tractor-trailers.
J.B. Hunt primarily relies on Fuller v. Tennessee-CarolinaTransportation Co., 63 Tenn. App. 330, 471 S.W.2d 953 (1970). In that case, Fuller, the owner of several commercial vehicles, suffered damage to his property when a tractor-trailer crossed the center line of a steep and winding highway and forced Fuller's driver, who was approaching this tractor-trailer, to pull to the right of the highway to avoid a collision. Fuller's driver testified that the tractor was a red II-67 series Mack cab-over-engine tractor. The only identifying mark, however, that the driver saw was a red diamond-shaped figure in the center part of the front of the trailer; that figure carried the letters "T.C.T." There was testimony that that mark matched the markings on trailers owned by the defendant. The defendant had discarded logs and other records that would have been helpful in determining whether one of its tractors was the vehicle towing its trailer. Further, the defendant was not the only common carrier owning Mack cab-over-engine tractors. The Tennessee Court of Appeals, primarily relying on the "uncontroverted evidence that the defendant frequently interchanged trailers with other carriers," held that the lower court had properly directed a verdict in favor of the defendant. Tennessee-Carolina Transportation Co.,63 Tenn. App. at 340, 471 S.W.2d at 957. The court concluded that the evidence presented did not allow the inference that it was more probable than not that one of the defendant's tractors was in the vicinity of the accident when the accident occurred.
J.B. Hunt's evidence indicates that a customer, such as Scott Paper Company, might have the use of a J.B. Hunt trailer for shipping loads from one of its facilities to another. J.B. Hunt also presented evidence that it has sold several thousand of its older trailers to other trucking companies, and it presented photographs of sold trailers showing that the J.B. Hunt logo no longer appeared on the doors of those trailers but that the doors were painted yellow. J.B. Hunt did not present evidence, as the defendant did in Tennessee-CarolinaTransportation Co., to show interline and interchange operations. Further, it did not present evidence showing the frequency with which customers like Scott Paper Company have the use of J.B. Hunt trailers, and it did not present evidence showing that customers having the use of J.B. Hunt trailers travel I-10 in Mobile County. Accordingly, whatever distinction might be drawn where tractor-trailer rigs, rather than ordinary trucks, are concerned, this case does not present a factual situation compelling enough for this Court to modify its long-standing rule, which conforms with the majority rule in the United States.
B. Sufficiency of the Evidence
J.B. Hunt argues that Credeur failed to present substantial evidence that J.B. Hunt owned the vehicle alleged to have caused the accident that injured Credeur. J.B. Hunt moved for a directed verdict, a judgment notwithstanding the verdict, and a new trial on this ground; all of these motions were denied. This Court stated in John R. Cowley Brothers, Inc. v. Brown,569 So.2d 375 (Ala. 1990): *Page 1360 
 " 'The law of Alabama is clear as to the standards for testing a motion for directed verdict and a motion for judgment notwithstanding the verdict (JNOV). The standard for testing a motion for directed verdict is identical to that for testing a motion for JNOV. Casey v. Jones, 410 So.2d 5
(Ala. 1981). Both motions test the sufficiency of the evidence. Wright v. Fountain, 454 So.2d 520
(Ala. 1984).' Black Belt Wood Co. v. Sessions, 514 So.2d 1249, 1251 (Ala. 1986). Evidentiary challenges, except on grounds of admissibility, are divided into two separate and distinct categories: sufficiency of the evidence raised by motion for JNOV and measured by the substantial evidence rule; and weight and preponderance of the evidence, raised by motion for a new trial and measured by the 'palpably wrong and manifestly unjust' standard. Nelson Bros., Inc. v. Busby, 513 So.2d 1015, 1018 (Ala. 1987), quoting Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala. 1982)."
569 So.2d at 376-77. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). Additionally, "[i]n ruling on a motion for a directed verdict or for a J.N.O.V., the court views the entire evidence and makes all reasonable inferences therefrom in favor of the nonmoving party. Pickett v. United States Steel Corp.,495 So.2d 572 (Ala. 1986)." Sears, Roebuck Co. v. Harris,630 So.2d 1018, 1025 (Ala. 1993).
This Court held in Credeur I that Credeur had made a primafacie showing that the defendant owned the truck that caused Credeur's injuries. This Court stated:
 "Credeur argues that he was very familiar with the distinctive paint scheme and the lettering of the defendant's name on its trucks. He testified that the truck that caused his accident was painted with the yellow paint scheme and the bold black lettering that he says is distinctive to the defendant's trucks and that the defendant's name was painted on the truck. At his deposition, he was able to describe the distinctive J.B. Hunt lettering and paint scheme that he says he had seen on the truck that caused his accident.
 "At the time of the accident the defendant operated approximately 350 tractors and over 4,000 trailers out of its Atlanta, Georgia, terminal. The defendant did not disclose where any of its trucks were on the night of the accident and cannot show that one of the trucks was not involved."
Credeur I, 655 So.2d at 934-35. Additionally, Credeur testified that earlier on the evening of the accident he had seen a J.B. Hunt tractor-trailer rig travelling eastbound on I-10 just as Credeur was. He stated that he could identify the tractor he had earlier seen towing the trailer as a J.B. Hunt tractor. He admitted that he was uncertain whether the tractor he had seen was the vehicle that later made an improper lane change.
Further, the testimony of James Corso,[1] the driver of the truck following immediately behind Credeur at the time of the accident, supported Credeur's position, except that he said that because of the darkness and distance he could not recognize any identifying marks on the tractor-trailer that caused Credeur's accident, but he said he did see it heading north on I-65. He stated, "I wasn't concerned at the moment with whose truck was in front of [Credeur]. I was concerned with my truck and helping this guy get out of his truck alive." Corso did testify, however, that immediately after he and another trucker pulled Credeur out of his vehicle, Credeur said to them, "it was a J.B. Hunt truck; did you see it?" Cynthia Albert, the insurance manager at Sam Broussard Trucking Company, also supported Credeur's testimony in that she stated that at every time the accident was discussed or paperwork was completed in reference to the accident, Credeur maintained that a J.B. Hunt truck caused the accident. *Page 1361 
This Court has noted the evidence J.B. Hunt presented. The fact that it was possible that a driver for Scott Paper Company or some other customer was towing the J.B. Hunt trailer does not render it more likely than not. Credeur's evidence allows the inference that it was more probable than not that J.B. Hunt's tractor was involved in the accident. The trial judge properly denied the motions for directed verdict, judgment notwithstanding the verdict, and new trial.
 II. Impeachment of Credeur
J.B. Hunt argues that the court abused its discretion in limiting its cross-examination of Credeur on the issue of his previous driving record and qualifications. J.B. Hunt asserted at trial that it could show past misrepresentations by Credeur about his driving record and asserted two grounds for the admissibility of these alleged misrepresentations: (1) the issue of Credeur's credibility and (2) the issue of future lost wages.
A. Credibility
J.B. Hunt insists that because the only testimony that the tractor-trailer that allegedly caused the accident was a J.B. Hunt motor vehicle came from Credeur, Credeur's credibility was at issue and was at issue in such a way that the judge's limitations on impeachment constituted reversible error. The proffered impeachment evidence, however, would have impeached Credeur's character by a showing of specific bad acts, none of which was related to the accident on January 29, 1991, and none of which tended to show bias against J.B. Hunt. The trial court ruled that the proffered evidence concerned a collateral matter; the court refused to allow J.B. Hunt to impeach Credeur with a prior inconsistent statement that the court concluded did not concern a material element in the case.
This Court has stated:
 "The extent of cross-examination on irrelevant facts, for the purpose of testing bias or credibility of the witness' testimony is a matter resting largely in the discretion of the trial court, and his ruling will not be disturbed unless it appears that he has abused his discretion to the prejudice of the complaining party."
Nelson v. Johnson, 264 Ala. 422, 427, 88 So.2d 358, 362 (1956). See also Watson v. City of Florala, 420 So.2d 55 (Ala. 1982). "A witness may not be cross-examined for impeachment as to specific acts of misconduct by him which have no relevancy except as tending to show that he is a person of bad character as a whole or with respect to truth and veracity." C. Gamble,McElroy's Alabama Evidence § 140.01(10) (4th ed. 1991). J.B. Hunt has shown no abuse of discretion on the part of the trial judge.
B. Future Lost Wages
As an alternative ground for admissibility, J.B. Hunt argues that the proffered impeachment evidence was relevant to Credeur's claim for damages for future lost wages. J.B. Hunt attempted to show that Credeur, on his employment application for Sam Broussard Trucking Company, had failed to list his most recent employer, M.S. Carriers. This was significant, argued J.B. Hunt, because Credeur, it alleged, had been terminated from M.S. Carriers for drinking on the job and for his involvement in a number of accidents. Additionally, J.B. Hunt attempted to question Credeur about previous traffic violations and about whether he had had his driver's license suspended or revoked.
In arguing to have this evidence admitted, counsel for J.B. Hunt told the judge: "Judge, he will say he can't get a job driving a truck because of his limitation. He can't get a job driving a truck because of his driving record." On appeal, J.B. Hunt refers to federal regulations that would prohibit a person with the driving history J.B. Hunt says Credeur has from driving a commercial vehicle. In this way, J.B. Hunt attempts to show that the driving history is relevant to the issue of future lost wages. Credeur points out that, at trial, J.B. Hunt cited no statutes and pointed to no evidence to support its assertion that Credeur's alleged driving record would forever preclude him from driving a truck in the future. Credeur also refers to the following exchange that occurred just after J.B. Hunt's counsel made the statement quoted above: *Page 1362 
 "The Court: His ability to drive a truck is not in issue.
 "Mr. Luther [counsel for J.B. Hunt]: They're claiming lost future wages because he can't come back to truck driving.
 "Mr. Hedge [counsel for Credeur]: But that's undisputed he can't go back to truck driving because a medical doctor said he can't. That is undisputed testimony. If they wanted to dispute that, they should have got their doctor to come down here and testify otherwise.
 "The Court: Do you have any other experts saying otherwise? By that I mean do you say, 'No, this man is totally unemployed because I'm an expert in the freight carrying business and this guy is totally unemployed because of his past records'?
 "Mr. Luther: I have not identified such an expert, Your Honor.
". . . .
 "The Court: So, unless it is a prior inconsistent statement concerning a material element of the case, I'm not going to allow prior false statements.
"Mr. Luther: Regarding his driving record?
"The Court: Regarding his driving record. . . ."
Again, J.B. Hunt has shown no abuse of discretion by the trial judge in disallowing this cross-examination.
 III. Collateral Source Rule
J.B. Hunt argues that evidence of Credeur's settlement of a claim for workers' compensation benefits should have been admitted at trial. As this Court has stated, "showing that the plaintiff received payments from a source wholly independent of the wrongdoer, such as workmen's compensation or disability payments, constitutes reversible error." Illinois Cent. GulfR.R. v. Haynes, 592 So.2d 536, 541 (Ala. 1991). J.B. Hunt argues that disallowing the evidence that Credeur had received workers' compensation benefits misleads the jury about a plaintiff's financial status. J.B. Hunt relies on § 12-21-45, Ala. Code 1975, which provides, in pertinent part:
 "(a) In all civil actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintigf's medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence."
Credeur was not seeking damages for medical or hospital expenses. Even if he were, however, this Court in AmericanLegion v. Leahey, 681 So.2d 1337 (Ala. 1996), has today held §12-21-45 unconstitutional. It would have been error, under prior case law and in light of our holding in Leahey, to admit the evidence under § 12-21-45.
Credeur's receipt of workers' compensation benefits and the subsequent settlement for future workers' compensation benefits are irrelevant to whether Credeur is entitled to be compensated by J.B. Hunt. The trial judge properly refused to allow J.B. Hunt to show that Credeur had received workers' compensation benefits and that Credeur entered into a settlement regarding a claim for future workers' compensation benefits.
 IV. Whether Losses for Which Future Damages were Sought were the Proximate Result of the Accident
J.B. Hunt argues that Credeur failed to present substantial evidence that the losses for which Credeur sought future damages were proximately caused by the accident of January 29, 1991. This argument, also, is without merit. Credeur's two physicians testified that the accident aggravated of Credeur's previously asymptomatic spondylitic disease. The evidence tended to show that Credeur had suffered no symptoms from this disease before the accident, but that Credeur was still suffering from a loss of range of motion of the cervical spine at the time of trial. The evidence tended to show that after the accident Credeur suffered a great deal of pain that precluded him from any heavy labor, but that he recovered enough that he attempted to return to work driving a truck. This attempt was unsuccessful and caused further deterioration of his physical condition. The accident was shown to have effectively precluded him from driving a truck for a living. *Page 1363 
 V. Excessiveness of the Verdict
J.B. Hunt argues that the verdict was excessive and was based on speculation. Credeur claimed damages for loss of earnings, impairment of his ability to earn, physical pain and suffering, mental anguish, permanent injury, and aggravation of a pre-existing condition. He presented evidence of approximately $68,000 in past lost wages and approximately $72,000 in future lost wages.
Additionally, Credeur presented substantial evidence of mental anguish. He testified that for approximately 40 years he had been a truck driver (with intermittent periods of working at other jobs) and that truck-driving was all he had ever wanted to do for a living. He stated that he "just love[d] to be on the road" and that he would "give [his] right arm" to continue driving a truck. He testified that his favorite hobby had been riding horses, but that now, because of the aggravation of his pre-existing condition, riding horses causes him unbearable pain. He said that the aggravation of the pre-existing injury has also caused him to give up gardening, another pastime he had enjoyed before the accident. He testified that he had attempted to find light-duty work, but that he had been unsuccessful. He also had attempted to run a lounge, he said, but he said the lounge failed because the pain prevented him from effectively managing the business. Credeur testified that his employees began stealing from him, and he believed they were stealing because he was unable to remain in the lounge for any length of time to oversee his employees.
Credeur presented substantial evidence of pain and suffering. He stated that he suffered neck injuries and numbness of the right arm. His doctors testified that during examinations they observed Credeur moving in a way that indicated he was in pain. He testified that he was experiencing some pain at the time of the trial, although he said the degree of pain was less than it had been immediately after the accident. He also testified as to the difficulties he said he experienced in trying to run the lounge because of the pain.
A jury's verdict carries a presumption of correctness, but that presumption may be overcome by a clear showing that the damages award was excessive. Williston v. Ard, 611 So.2d 274
(Ala. 1992). J.B. Hunt has not made such a showing. This Court has stated that "[t]here is no fixed standard for ascertainment of compensatory damages recoverable . . . for physical pain and mental suffering" and that "the amount of such award is left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise of that discretion." Alabama Power Co. v. Mosley, 294 Ala. 394, 401,318 So.2d 260, 266 (1975).
In Pitt v. Century II, Inc., 631 So.2d 235 (Ala. 1993), this Court noted:
 "A court reviewing a verdict for compensatory damages must determine what amount a jury, in its discretion, may award, viewing the evidence from the plaintiff's perspective. Bridges v. Clements, 580 So.2d 1346, 1349 (Ala. 1991)."
631 So.2d at 239. The verdict form showed that the jury awarded $141,000 as damages for past loss and harm and $359,000 for future loss and harm. This Court recognizes that "there [is no] yardstick to measure the amount of recompense which should be awarded for . . . mental suffering," Birmingham Electric Co. v.Thompson, 251 Ala. 465, 466, 37 So.2d 633, 634 (1948), and it concludes that the total damages awarded Credeur are consistent with the evidence of his economic losses and his pain and suffering. The record would not support a finding of any juror misconduct, bias, passion, prejudice, corruption, or improper motive. Accordingly, this Court has no authority to reduce the award of compensatory damages. Northeast Alabama RegionalMedical Ctr. v. Owens, 584 So.2d 1360 (Ala. 1991).
 VI. Conclusion
The defendant J.B. Hunt has shown no reversible error. The judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, ALMON, INGRAM, COOK, and BUTTS, JJ., concur.
[1] The testimony quoted in this paragraph is taken from Corso's video deposition, which was read into evidence at trial. *Page 1364