681 So.2d 1337 (1996)
AMERICAN LEGION POST NUMBER 57
v.
Regenia LEAHEY.
1930990.
Supreme Court of Alabama.
July 12, 1996.
James J. Bushnell, Jr. of Gleissner, Bowron, Bushnell & Henderson, Birmingham, Forrest S. Latta and W. Pemble DeLashmet of Pierce, Carr & Alford, P.C., Mobile, for Appellant.
Lee A. Rudolph and Earl P. Underwood, Jr. of Underwood & Rudolph, Anniston, for Appellee.
Richard S. Manley of Manley, Traeger & Perry, Demopolis, J. Mark Hart and Sally A. Broatch of Spain, Gillon, Grooms, Blan & Nettles, Birmingham, for Amicus Curiae Alabama Defense Lawyers Ass'n in support of appellant.
Andrew T. Citrin and David G. Wirtes, Jr. of Cunningham, Bounds, Yance, Crowder & Brown, Mobile, for Amicus Curiae Alabama Trial Lawyers Ass'n in support of appellee.
ALMON, Justice.
This interlocutory appeal comes from an order holding unconstitutional Ala.Code 1975, § 12-21-45, which would allow the defendant in this personal injury action to introduce evidence that the plaintiff received from a collateral source payments for her medical or hospital expenses. Regenia Leahey was injured when she slipped and fell on the premises of American Legion Post Number 57 ("American Legion"); she brought an action against American Legion, alleging that it had negligently or wantonly caused her injuries. Leahey filed a motion to declare § 12-21-45 unconstitutional, and she served a copy of the motion on the attorney general of the State of Alabama. The attorney general acknowledged *1338 service of the motion and waived further notice or participation in the action.[1] After proceedings on the motion, the circuit court entered an order granting it, and, pursuant to Rule 5, Ala. R.App. P., stated that the order involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal would be beneficial as provided in the rule. This Court granted American Legion's petition for permission to appeal, pursuant to Rule 5.
Section 12-21-45 reads:
"(a) In all civil actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence. In such actions upon admission of evidence respecting reimbursement or payment of medical or hospital expenses, the plaintiff shall be entitled to introduce evidence of the cost of obtaining reimbursement or payment of medical or hospital expenses.
"(b) In such civil actions, information respecting such reimbursement or payment obtained or such reimbursement or payment which may be obtained by the plaintiff for medical or hospital expenses shall be subject to discovery.
"(c) Upon proof by the plaintiff to the court that the plaintiff is obligated to repay the medical or hospital expenses which have been or will be paid or reimbursed, evidence relating to such reimbursement or payment shall be admissible.
"(d) This section shall not apply to any civil action pending on June 11, 1987."
Against the constitutionality of § 12-21-45, Leahey argued, and the circuit court agreed, that it violates: the right to trial by jury as guaranteed by Ala. Const.1901, § 11; the right to a remedy and to access to the courts as guaranteed by § 13; the constitutional guaranties of equal protection, see §§ 1, 6, and 22, and due process, §§ 6 and 13; and the principle of separation of powers as preserved by §§ 42 and 43.
The collateral source rule has been summarized as follows:
"In tort cases, the plaintiff may receive benefits from a third party who is in no way connected with the defendant, and receipt of these benefits from the source collateral to the defendant has the effect of lessening the financial losses which the plaintiff would otherwise have suffered. Thus, if the basic goal of tort law is only that of compensating plaintiff for his losses, evidence of these benefits should be admitted to reduce the total damages assessed against the defendant. At the same time, reducing recovery by the amount of the benefits received by the plaintiff would be, according to most courts, granting a `windfall' to the defendant by allowing him a credit for the reasonable value of those benefits. Such a credit would result in the benefits being effectively directed to the tortfeasor and from the intended party the injured plaintiff. If there must be a windfall, it is usually considered more just that the injured person should profit, rather than let the wrongdoer be relieved of full responsibility for his wrongdoing. Thus, the courts generally have held that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. This is known as the `collateral source rule.' Under it, the wrongdoer cannot take advantage of the contracts or other relation that may exist between the injured person and third persons. Thus, while a plaintiff's recovery under the ordinary negligence rule is limited to damages which will make him whole, the collateral source rule allows a plaintiff further recovery under certain circumstances even though he has suffered no loss."
22 Am.Jur.2d Damages § 566 (1988) (citations omitted).
This Court first articulated the collateral source rule in Long v. Kansas City, M. & B. *1339 R.R., 170 Ala. 635, 641-42, 54 So. 62, 63-64 (1910):
"If A. negligently or intentionally burns B.'s house, and B. sues him for damages, surely A. cannot defeat this action by pleading and showing that C. had paid B. the full value of his house under a contract of insurance between B. and C., as to which A. is a perfect stranger. It is no concern of A.'s that C. may be, by contract or otherwise, subrogated to the rights of B. in the matter. The question, to whom will the damages belong when recovered, is one in which the defendant has no interest. It does not even affect the measure of his liability; and [it] is not a proper issue in the suit by B. against A. The insurance of the property is a mere indemnity, and insurer and insured are regarded as one person. The mere fact that the insurer has paid the insured cannot affect the action against the wrongdoer who has destroyed or injured the property, the subject of the insurance.
"This question has been expressly decided a number of times. In the case of Anderson v. Miller, 96 Tenn. 35, 33 S.W. 615, 54 Am.St.Rep. 812, it was so decided (and this case collects and reviews the authorities), the court, among other things, saying: `In regard to the proper parties to the action, we do not think the assignment well taken. If it be conceded that the insurance company, having paid the entire fire loss, is now entitled to be subrogated to the rights of the insured, as against the tort-feasor, or to recover back from him the amount he recovers, still it does not prevent a recovery in the name of the insured for the damages sustained. The question of who will be entitled to the proceeds of the recovery, the insurer or the insured[,] is a matter between them, and constitutes no defense to an action for the damages, caused by the wrong, which, in any event, must be brought in the name of the owner and insured, although it might be for the use of the insurer.24 Am. & Eng. Law, pp. 308-330; Perrott v. Shearer, 17 Mich. 48, 55, 56; Clark v. Wilson, 103 Mass. 219-227, 4 Am.Rep. 532; Hayward v. Cain, 105 Mass. 213; Weber v. Morris & E.R. Co., 35 N.J.L. 409, 10 Am. Rep. 253.'
"... The payment is not made by the insurer for the benefit of the wrongdoer, but is made in accordance with the contract of insurance. The owner, of course, has paid the insurer for the insurance or indemnity; and whether this be more or less than the damages for which the wrongdoer is liable is no concern of the latter."
This Court has consistently held that collateral source evidence is inadmissible. See, e.g., Gribble v. Cox,, 349 So.2d 1141, 1143 (Ala.1977); Carlisle v. Miller, 275 Ala. 440, 444, 155 So.2d 689, 691 (1963); Vest v. Gay, 275 Ala. 286, 289, 154 So.2d 297, 299-300 (1963); Sturdivant v. Crawford, 240 Ala. 383, 385, 199 So. 537, 538 (1940).
The leading treatise on the law of evidence in Alabama analyzes this rule as being analogous to the rule that evidence of a defendant's liability insurance is not admissible, a point that is significant in light of the fact that § 12-21-45 does not purport to make evidence of the defendant's insurance admissible:
"The general exclusionary rule which precludes the admission of the defendant's liability insurance coverage also applies to preclude the defendant from introducing evidence that the plaintiff had insurance coverage or has been indemnified for the accident in question. This preclusion would generally be considered simply to be an application of the collateral source rule which provides that the plaintiff's receipt of [benefits] arising out of an accident does not affect [the plaintiff's] rights against the defendant. When a person sues for injury to his person or property, the defendant may not prove that an insurance company has paid or is liable to the plaintiff for any or all of his loss and this is true even though the proceeds of any judgment recovered will inure wholly or in part to an insurance company, as subrogee of the plaintiff's claim."
C. Gamble, McElroy's Alabama Evidence, § 189.04(2) (4th ed.1991) (citations omitted).
The legislature, in 1979, eight years before it enacted § 12-21-45, enacted a statute abrogating *1340 the collateral source rule in product liability actions. That statute, now § 6-5-522, Ala.Code 1975, reads, in pertinent part:
"In all product liability actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed (1) by medical or hospital insurance, or (2) pursuant to the medical and hospital payment provisions of law governing workmen's compensation, shall be admissible as competent evidence in mitigation of such medical or hospital expenses damages."
(Emphasis added.) Thus, in the 1979 act, the legislature used language that at least gives some guidance as to the purpose for which the collateral source evidence is to be admitted.[2] Any such language is noticeably missing from § 12-21-45, the statute now being challenged. Compare Ala.Code 1975, § 6-5-545, by which the legislature, at the same time[3] it enacted the provision codified at § 12-21-45, enacted for medical malpractice actions a provision almost identical[4] to § 12-21-45, also omitting any reference to the effect of the evidence on an award of damages.
This Court has addressed § 6-5-522 once, in Hammond v. McDonough Power Equipment, Inc., 436 So.2d 842 (Ala.1983), noting that no constitutional challenge had been made, holding that the circuit court had not misconstrued it, and remarking that any error in construction would have been harmless anyway because the jury had returned a verdict for the defendant on the question of liability:
"Several of our state constitutional provisions, among others, Ala. Const. Art. I, §§ 1, 6, and 22, are relevant to our consideration of the legislature's abrogation of the collateral source rule as applied to products liability cases. However, Hammond presents no constitutional challenges to the statute, contending only that the trial court misconstrued its meaning. We disagree with that contention. In any event, even if the charge were erroneous, such error is without injury. The jury returned a verdict in favor of McDonough on the issue of liability, which is supported by the evidence."
436 So.2d at 844. Thus, even in noting that no constitutional challenge had been made to § 6-5-522, the Court stated that that section implicated §§ 1, 6, and 22 of the Constitution, which this Court has held to guarantee the right to equal protection of the laws. See Smith v. Schulte, 671 So.2d 1334 (Ala.1995).
This Court has addressed § 12-21-45 once, in Senn v. Alabama Gas Corp., 619 So.2d 1320, 1325 (Ala.1993), holding that the circuit court "did not err in refusing Senn's requested jury charges on the collateral source rule," because the collateral source rule "was abrogated by Ala.Code 1975, § 12-21-45." No constitutional challenge to § 12-21-45 was raised in Senn.[5] This Court has not addressed § 6-5-545. Thus, the constitutional arguments against the legislative efforts to modify or abolish the collateral source rule are presented here for the first time.
Federal courts sitting in Alabama have addressed these statutes and, in some of the cases addressing these statutes the federal *1341 courts have addressed the question of the validity of these statutes under the United States Constitution. The federal courts have reached conflicting results. Bradford v. Bruno's, Inc., 41 F.3d 625 (11th Cir.1995); Craig v. F.W. Woolworth Co., 866 F.Supp. 1369 (N.D.Ala.1993), affirmed, 38 F.3d 573 (11th Cir.1994); Killian v. Melser, 792 F.Supp. 1217 (N.D.Ala.1992); Richards v. Michelin Tire Corp., 786 F.Supp. 964 (S.D.Ala.1992). The Court of Appeals for the Eleventh Circuit held in Bradford that § 12-21-45 provides a substantive rule of law to be applied in federal courts, thereby presumably overruling the district courts' holdings in Craig and Killian that § 12-21-45 provides only an evidentiary rule that does not apply in a federal court, although the affirmance of Craig leaves a possible conflict between the opinion of the three-judge panel in Bradford and that of the three-judge panel in Craig. Bradford expressly notes that no constitutional issue was raised, however, and characterizes as "dictum" Judge Guin's alternative holding in Craig that § 12-21-45 is unconstitutional. 41 F.3d at 626, fn. **.
Nevertheless, Judge Guin's analysis in Craig is the most pertinent writing from the federal courts on the constitutionality of § 12-21-45, and we therefore reproduce portions of it here:
"The court finds that were section 12-21-45 taken as a substantive provision, it [would be] egregiously unconstitutional. In the guise of a procedural change, this provision potentially deprives insurers of their substantive subrogation rights without due process of law. Such deprivation is a violation of insurers' substantive due process rights as guaranteed by the fifth (as to federal legislation) and fourteenth (as to state legislation) amendments. This statute epitomizes the type of arbitrary governmental action the United States Supreme Court has sought to prevent in its development of the concept of substantive due process. See, Bernard Schwartz, Constitutional Law, section 100, Substantive Due Process (1972).
"Section 12-21-45 opens the door to chaos. This provision allows the jury to hear evidence of third party payment of medical expenses without giving it any guidelines for applying this information to its deliberations. Each jury would be allowed to decide for itself whether bargained for subrogation rights should be honored. Should the jury find in favor of the plaintiff, it can, at its whim, shift the loss from the culpable defendant to the innocent insurer. Wildly inconsistent verdicts on the same issue are thus invited. This license results in a deprivation of substantive due process. A government of men rather than law is thereby created in open contravention of the purpose of the Constitution and the laws promulgated thereunder. This deprivation of due process requires that the statute be stricken for violation of the due process provision of the fourteenth amendment."
866 F.Supp. at 1373.
See also Judge Acker's pointed criticism in Killian of § 12-21-45, including the following:
"[T]his court, to the extent it is capable of understanding § 12-21-45, concludes that the Alabama legislature intended no more than to permit an alleged tortfeasor to muddy the water by requiring the trial judge to allow the jury to listen to evidence that, in reality, is irrelevant and prejudicial, and which the trial court, as it later instructs the jury, must describe as having nothing whatsoever to do with the true calculation of the possible recoverable damages. This court has conducted no empirical survey of what Alabama trial judges are presently doing to prevent a defendant's closing argument from degenerating into an attempt by the defendant who has availed himself of § 12-21-45, to persuade the jury of the plaintiff's greed and of the immorality of a double recovery by the plaintiff for his medical expenses. Any good lawyer could devise some good public policy arguments for such a proposition, but he would undoubtedly only duplicate those voiced by the putative defendants at the hearings before whatever legislative committee reported § 12-21-45, in its final form, out favorably. If the statute makes any sense, a debatable question, it constitutes a deliberate *1342 invitation to engage in a moral debate on the collateral source doctrine in every simple negligence case. The legislative intent may well have been to discourage personal injury plaintiffs from seeking to recover even sizeable medical expenses if they have some chance, however slight, of recovering from another source....
"This court has held informal conversations with more than one Alabama trial judge on this subject and has learned that Alabama trial judges are routinely allowing the introduction of evidence rendered `admissible' by § 12-21-45 but thereafter charging the jury that it may `consider' the said evidence for whatever it may be worth. Such an ambiguous jury charge, while an understandable effort to comply with § 12-21-45, is tantamount to telling the jury that it can, with impunity, reduce any justifiable verdict by the amount of money plaintiff may receive from a collateral source, but that it need not do so, or, for that matter may punish a greedy plaintiff and give him nothing in an otherwise meritorious case. On the other hand, some Alabama trial judges are remaining silent on the subject and are simply ignoring § 12-21-45 in their jury instructions and then crossing their fingers. The fact that no suggested jury instruction on the subject can yet be found in Alabama Pattern Jury Instructions may provide an explanation for the latter approach. Meanwhile, the Supreme Court of Alabama has not spoken authoritatively on § 12-21-45.
"Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), is correctly cited by Melser for the proposition that the distinction between substance and procedure is crucial in determining whether to apply state or federal law. Because this court is bound by the Federal Rules of Evidence and not by § 12-21-45, which, by its terms, is no more than an Alabama rule of evidence, this court will follow [Fed. R.Evid.] 401 and 403, which prohibit the introduction of this type information, which has no probative value on any issue here in dispute and [which] creates a serious `danger of unfair prejudice, confusion of the issues, or misleading [of] the jury'.
"... This court sympathizes with ... Alabama's trial [judges], and is happy to be free from the tenuous grip of a statute which purports to make the `irrelevant' into the `admissible'.
". . . .
"If this court believed for a moment that there is a serious possibility that § 12-21-45 is really `substantive', it would either invite Killian to attack its constitutionality and force the constitutional question to be decided here, or it would certify the question of statutory interpretation to the Supreme Court of Alabama; but because this court is fully satisfied that the statute only constitutes a rule of evidence not binding on this court, this court will, by separate order, grant plaintiff's motion in limine."
792 F.Supp. at 1219-21.
In light of these two lengthy and strong criticisms of § 12-21-45, the passing remark by the trial court in Richards that "it will not find Ala.Code [(1975),] §§ 6-5-522 and 12-21-45, which abolish the collateral source rule, unconstitutional," 786 F.Supp. at 966, does not carry much weight.
In Bradford, the Court of Appeals for the Eleventh Circuit overruled the holdings of both Craig and Killianthat § 12-21-45 provides a rule of procedure that is not to be applied in federal courts. The Bradford holding is based on the fact that the Eleventh Circuit "held in Southern v. Plumb Tools, a Division of O'Ames Corp., 696 F.2d 1321, 1323 (11th Cir.1983), that Alabama's common law collateral source rule was substantive law to be applied by federal courts in diversity cases." 41 F.2d at 626. The Bradford court also wrote: "[Southern] instructs us in this case because § 12-21-45, which is Alabama's statutory modification of its common law collateral source rule, is as much substantive law as was the common law rule it modified." 41 F.2d at 626. We respectfully note that the Court of Appeals does not seem to have considered the fact, so well expressed by Judges Acker and Guin, that while § 12-21-45 explicitly purports to change the law on the admissibility of collateral source evidence, it gives no guidance as *1343 to the effect that evidence is to have on the law of damages. Thus, while we agree that the collateral source rule as a whole is a rule of substantive law, we also agree with Judges Acker and Guin that the partial abrogation of it only as to admissibility of evidence affects only the procedural component of the collateral source rule, not its substantive component.
In support of her motion to have § 12-21-45 declared unconstitutional, Leahey filed a copy of a brief supporting a similar motion that had been filed in Scott v. Rheem Mfg. Co., CV92-854, Circuit Court of Baldwin County, and a copy of the circuit court's January 1994 order granting the motion in Scott. In granting Leahey's motion, the circuit court referred to the Scott v. Rheem Mfg. brief as presenting a "substantially correct interpretation of prevailing U.S. and Alabama constitutional law in regard to the instant question" and stated that, while the court was not "in total agreement with every point argued in said brief," the brief was "basically adopted by the Court by reference." Many of the authorities discussed herein are cited in the Scott v. Rheem Mfg. brief and are addressed in the briefs of the appellant and the brief of amicus curiae Alabama Trial Lawyers Association. In addition to studying the arguments in these synoptic briefs, we have studied the briefs of the appellee and the brief of amicus curiae Alabama Defense Lawyers Association, and we have independently researched the question.
Other states have enacted statutes affecting the collateral source rule, and the courts of several of those states have ruled on the constitutionality of the enactments. The statutory provisions, as well as the state constitutional provisions under which they are reviewed, vary considerably, so we may draw analogies to those cases only by paying careful attention to these differences. On this point, the briefs of the parties and the amici have been especially helpful.
In Denton v. Con-Way Southern Express, Inc., 261 Ga. 41, 402 S.E.2d 269 (1991), the Supreme Court of Georgia considered a statute that provided:
"In any civil action ... in which special damages are sought to be recovered ..., evidence of all compensation, indemnity, [and] insurance (other than life insurance)... available to the injured party ... shall be admissible for consideration by the trier of fact. The trier of fact, in its discretion, may consider such available benefits or payments and the cost thereof but shall not be directed to reduce an award of damages accordingly."
261 Ga. at 41-42, 402 S.E.2d at 269-70, fn. 1, quoting OCGA § 51-12-1(b). The court discussed the basis for the collateral source rule, referring to collateral source evidence as having an "infectiously prejudicial effect," 261 Ga. at 43, 402 S.E.2d at 270, and held that the statute violated the state constitution in two respects. First, the court held that the first sentence of Art. I, § I, Para. II, of the Georgia Constitution of 1983"Protection to person and property is the paramount duty of government and shall be impartial and complete"provides protection over and above that given by the second sentence, which guarantees equal protection of the laws. The court then held that OCGA § 51-12-1(b) violated that first sentence:
"`"There can be no equal justice where the kind of trial [or the damages] a man gets depends on the amount of money he has."' ... Because inherently prejudicial evidence is allowed only to show the plaintiff's sources, juries will be misled. If, for example, both the plaintiff and the defendant are insured, but the jury is only informed of the plaintiff's coverage, it may assume that only the plaintiff has insurance and the plaintiff's insurance should pay for the loss caused by the tortfeasor."
261 Ga. at 45-46, 402 S.E.2d at 272 (citation omitted; bracketed material in original).
Thus, while insisting that the constitutional provision at issue provided protection somehow greater than, or different from, the protection against deprivation of equal protection of the laws, the Supreme Court of Georgia held the Georgia statute abolishing the collateral source rule unconstitutional, based on a rationale that is difficult to distinguish from an equal protection analysis. Moreover, the court in footnote four also held that the statute violated due process:

*1344 "Additionally, the due process clause of the Georgia Constitution demands that statutes be definite and certain. OCGA § 51-12-1(b) fails to give a jury any suggestion as to what to do with the evidence. People of `common intelligence must necessarily guess at its meaning and differ as to its application.' ... The statute's lack of standards [or] specific factors to be considered, and failure to offer guidance invites uncontrolled, intrinsically arbitrary, disparate, and unfair decisions."
261 Ga. at 45, 402 S.E.2d at 272, fn. 4 (citation omitted). Substitute "Alabama" for "Georgia" and "§ 12-21-45" for the Georgia citation, and this exact statement could be made in this opinion.
In Purdy v. Gulf Breeze Enterprises, Inc., 403 So.2d 1325 (Fla.1981), the Supreme Court of Florida upheld a statute that invalidated, in actions arising from automobile collisions, not only the collateral source rule but also the subrogation rights of the plaintiff's insurer. The decision was based on the fact that the Florida legislature had enacted "no-fault" provisions designed to reduce legal actions among persons involved in automobile collisions, see 403 So.2d at 1329. Furthermore, the court had earlier held that evidence of a defendant's liability insurance was admissible, see 403 So.2d at 1330. Thus, Florida law on the subject is so different from Alabama's that Purdy presents little that is informative on the question before us.
The Supreme Court of Minnesota upheld a Minnesota statute allowing a defendant, after a jury has returned a verdict for the plaintiff, to file a motion for "determination of collateral sources," whereupon the court "shall reduce the award" by
"amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses except those for which a subrogation right has been asserted."
Imlay v. City of Lake Crystal, 453 N.W.2d 326, 331, fn. 4 (Minn.1990), quoting Minn. Stat. § 548.36 (1986). The court addressed an equal protection argument and found the statute to be rationally related to the "legitimate purpose[s]" of "prevent[ing] double recoveries by plaintiffs," 453 N.W.2d at 331, and "reduc[ing] tort liability insurance premiums," id., at 332.
In Rudolph v. Iowa Methodist Medical Center, 293 N.W.2d 550 (Iowa 1980), the Supreme Court of Iowa, over a strong dissent, upheld a statute abrogating the collateral source rule in medical malpractice cases, overturning the trial court's holding that the statute violated the plaintiffs' rights to equal protection of the laws. We find the dissent much better reasoned in its detailed showing that the statute arbitrarily classified medical malpractice tortfeasors differently from other tortfeasors, malpractice victims differently from other plaintiffs, and malpractice plaintiffs with insurance differently from self-insured malpractice plaintiffs. The dissent quoted very persuasively from American Bank & Trust Co. v. Community Hospital of Los Gatos-Saratoga, Inc., 104 Cal.App.3d 219, 163 Cal.Rptr. 513 (1980).[6] Because the equal protection issues pertinent to the medical malpractice statutes are not present here, we will not discuss those Iowa and California opinions in detail. We note the following pertinent point in Chief Justice Reynoldson's dissent in Rudolph:
"Although much emphasis has been placed on the `emergency' nature of this legislation, no authority has been advanced to support the proposition that an alleged emergency suspends constitutional restraints on irrational and arbitrary classifications affecting substantive rights."
293 N.W.2d at 564 (Reynoldson, C.J., dissenting).
Furthermore, we agree with Chief Justice Reynoldson's criticism of the majority's failure to offer an in-depth analysis:
"Of course the plaintiffs carry a heavy burden in challenging the constitutionality of Iowa's collateral source statute.... But it is also true that recital of the traditional `rational basis rule' sometimes serves as a substitute for critical analysis. *1345 Without such analysis we abdicate our highest duty:
"`The provisions of the Fourteenth Amendment to the Constitution of the United States requiring equal protection of the laws, and the sixth section of Article I of the State Constitution requiring that all laws shall have a uniform operation, should not be frittered away. We have said their importance in guarding against the segregation of society into classes, and in assuring to all citizens that equality before the law, which is essential to free government, cannot be overestimated.... If the constitutionality of these statutes cannot be sustained save by resort to refinements in distinction and sophistry in reasoning, in which no court should indulge, and which would be destructive of the limitations above referred to on legislative power, they should fall.'
"[Chicago & Northwestern Ry. v. Fachman, 255 Iowa 989, 1003, 125 N.W.2d 210, 217-18 (1963)]."
Rudolph, 293 N.W.2d at 562 (Reynoldson, C.J., dissenting).
Abolition of the collateral source rule in medical malpractice actions has also been upheld in Eastin v. Broomfield, 116 Ariz. 576, 570 P.2d 744 (1977), and Fein v. Permanente Medical Group, 38 Cal.3d 137, 211 Cal.Rptr. 368, 695 P.2d 665, appeal dismissed, 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985).
Abolition of the collateral source rule in actions against municipalities has been upheld by intermediate courts in Murray v. Nicol, 224 N.J.Super. 303, 540 A.2d 239 (1988), and Germantown Savings Bank v. City of Philadelphia, 98 Pa.Cmwlth. 508, 512 A.2d 756 (1986), aff'd, 517 Pa. 313, 535 A.2d 1052 (1988).
Kentucky's abolition of the collateral source rule was upheld in Edwards v. Land, 851 S.W.2d 484 (Ky.App.1992), cert. denied, 858 S.W.2d 698 (Ky.1993). However, that decision was overruled, and the court held that the Kentucky statute violated the principle of separation of powers. O'Bryan v. Hedgespeth, 892 S.W.2d 571 (Ky.1995).
Three aspects of the operation of § 12-21-45 weigh heavily against the argument that the statute is constitutional. First and foremost, § 12-21-45 declares that collateral source evidence "shall be admissible as competent evidence," but it does not declare what that evidence is competent to prove. The statute does not purport to change the law of damages or to declare what effect the jury may give to the collateral source evidence. If it is intended to give the jury the option of reducing the amount of proven medical and hospital expenses by the amount of the collateral source paymentas indeed it must be intended, if it does anything other than to declare irrelevant and unfairly prejudicial evidence to be "competent" evidence is it then intended to require the jury so to reduce its award? If so, why does it not say so? Was the legislature apprehensive that such a requirement would violate § 11? However, if the jury is not required to reduce the award by the amount of the collateral source payment, does the statute completely leave to the jury's discretion whether to award the full amount of the proven hospital and medical expenses, to award only the difference between those expenses and the plaintiff's collateral reimbursement, or to award some amount in between? If this is the intent, it seems that the legislature has given the jury unbridled discretion in the award of compensatory damages.
Under either construction of the statute (i.e., whether it provides for a required setoff or for a discretionary setoff), a grave problem arises regarding the subrogation rights of the plaintiff's subrogeeordinarily an insurer, for insurance is the most typical case in which the plaintiff will receive collateral source payments, and most insurance policies give subrogation rights to the insurer. Although the plaintiff is allowed to prove his insurer's subrogation rights and his cost in obtaining the insurance, there is no provision in the act requiringor even suggesting that the jury is to award the full medical and hospital expense to the plaintiff simply because a subrogee is entitled to recover. On the contrary, the jury is perhaps less likely to award the full amount to the plaintiff if it knows that the bulk of the award will be paid to an insurer. The jury could improperly *1346 reach such a result either because of an irrational bias against insurers or because of a rational conclusion that the insurer has contracted to pay benefits such as the expenses at issue for the consideration of the premiums paid and therefore is the party most appropriate to bear the loss.[7]
The latter point raises another significant problem: a jury will be informed under § 12-21-45 that the plaintiff is insured, but will not be informed that the defendant is insured. The very fact that the fact of the plaintiff's insurance is introduced into evidence but no mention is made of insurance for the defendant may lead the jury to assume that the defendant has none and to improperly base a verdict on that assumption.
Thus, these three pointsthe apparent attempt to change the law of evidence without expressing the effect on the law of damages, the prejudicial effect on the subrogation rights of a plaintiff's insurer, and the admission into evidence of the fact that the plaintiff is insured without a concomitant admission of evidence that the defendant is insuredpresent serious problems to the constitutionality of the statute.
The Court in Baader v. State, 201 Ala. 76, 77-78, 77 So. 370, 371-72 (1917), stated:
"That the right of trial by jury may be regulated by the Legislature has been often reaffirmed; but legislative restrictions or amplifications must not be of such character as to deny or impair any of the fundamental requisites of a jury; that is, they may not vary the constituent number, nor provide for other than an unanimous verdict, nor introduce regulations leading away from impartiality."
(Emphasis added.) This list of limitations on the legislative power to affect the right to trial by jury has been held in later cases[8] to be unduly narrow, but even within the terms of this list § 12-21-45 violates § 11. The legislative attempt to allow introduction of evidence of the plaintiff's insurance without allowing introduction of evidence of the defendant's insurance overturns the careful balance that courts have always observed, whereby neither party's insurance or indemnification is admissible, because of its tendency to bias the jury, to "lead[] away from impartiality."
The statute also violates the guaranty of equal protection, because it allows evidence of the plaintiff's insurance coverage but not of the defendant's. It denies equal protection because it serves to diminish awards to plaintiffs with insurance, even if their insurer is subrogated to the recovery, but provides no diminution in awards to wealthier plaintiffs who are self-insured. This is the point made in Denton when the Georgia Supreme Court says, "There can be no equal justice where the kind of trial [or the damages] a man gets depends on the amount of money he has." 261 Ga. at 45, 402 S.E.2d at 272. Section 12-21-45 also violates the equal protection rights of plaintiffs with injuries that require expenditures for medical or hospital treatments, as opposed to those with only property damagethe section does not make collateral source payments for damage to property admissible.
Section 6 of the Alabama Constitution has been held to guarantee due process of law in civil as well as criminal cases. Pike v. Southern Bell Tel. & Tel. Co., 263 Ala. 59, 81 So.2d 254 (1955) (as extended on application for rehearing); Ross Neely Express, Inc. v. Alabama Dep't of Environmental Mgmt., 437 So.2d 82 (Ala.1983). "The courts have found that this right is violated when a statute or regulation is unduly vague, unreasonable, *1347 or overbroad." Ross Neely, 437 So.2d at 84; Friday v. Ethanol Corp., 539 So.2d 208, 215 (Ala.1988).
We also agree with the point implied in Killian that the statute violates the due process guaranty by stating that collateral source evidence is "competent" without stating what it is competent to prove or what effect its admission will have. One approach to resolving this problem would be to hold simply that § 12-21-45 does not affect the law of damages, but only the law of evidence. Under such an approach, a court reviewing a verdict on a motion for new trial to determine whether the verdict was inadequate would simply apply the law as to special damages and set the verdict aside if the verdict was significantly below the undisputed amount of medical and hospital expenses. A jury is not free to disregard undisputed evidence of special damages and award an amount inadequate to compensate the plaintiff for injuries proximately caused by the defendant's negligence or other wrongful conduct. Thompson v. Cooper, 551 So.2d 1030 (Ala.1989); Ex parte Patterson, 459 So.2d 883 (Ala.1984); McCain v. Redman Homes, Inc., 387 So.2d 809 (Ala.1980); Cocke v. Edwards, 215 Ala. 8, 108 So. 857 (1926); Roland v. Krazy Glue, Inc., 342 So.2d 383 (Ala.Civ.App.1977). Such a construction would effectively eviscerate § 12-21-45 and worsen its confusing effect because it would decidedly make the "competent" collateral source evidence immaterial, prejudicial, and confusing to the jury. In such an application, the statute would violate the plaintiff's right under §§ 6 and 13 of the Constitution to a remedy by due process of law.
On the other hand, if the Court were to attempt to save the statute by holding that it gives the jury discretion whether to reduce its award by the amount of the collateral source recovery or some portion thereof, a due process violation would arise from a different direction: the standardless submission to the jury of a complaint for compensatory damages. This violation is made more obvious by the fact that medical and hospital damages are special damages.
Finally, if the Court were to try to save the statute by reading it to require the jury to reduce its award by the amount of the collateral source payment, except to the extent that the plaintiff is required to reimburse the collateral payor, then § 12-21-45 would still violate the due process guaranty because of its introduction of evidence that the plaintiff is insured without allowing evidence that the defendant is insured, thereby inherently undermining the fairness of the proceeding. This reading would violate not only the plaintiff's right to due process, but also the right of the plaintiff's insurer not to be deprived of its contractual subrogation rights without due process of law, because, as explained above, the lopsided introduction of insurance evidence would tend to cause the jury not to require the defendant to reimburse the plaintiff's insurer for an indemnity that the insurer has contracted to provide and for which it has received premiums.
For the foregoing reasons, the circuit court correctly held that § 12-21-45 is unconstitutional. The order declaring the statute unconstitutional is therefore affirmed.
AFFIRMED.
SHORES, KENNEDY, INGRAM, and COOK, JJ., concur.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., dissent.
HOUSTON, Justice (dissenting).
I dissent from the holding that Ala.Code 1975, § 12-21-45, violates the right to trial by jury guaranteed by the Constitution of Alabama of 1901, § 11. See Henderson v. Alabama Power Co., 627 So.2d 878, 903-14 (Ala.1993) (Houston, J., dissenting); Ex parte Giles, 632 So.2d 577, 587-89 (Ala.1993) (Houston, J., concurring in the result), cert. denied, ___ U.S. ___, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994); Smith v. Schulte, 671 So.2d 1334 (Ala.1995) (Houston, J., dissenting), cert. denied, U.S. (1996); Ex parte Jackson, 672 So.2d 810 (Ala.1995) (Houston, J., concurring in the result); Ex parte Foshee, 246 Ala. 604, 606-07, 21 So.2d 827 (1945); and Amendment 328, § 6.11, Constitution of Alabama of 1901.
I dissent from the holding that Ala.Code 1975, § 12-21-45, violates the "phantom" *1348 equal protection clause in the Constitution of Alabama of 1901. See Moore v. Mobile Infirmary Association, 592 So.2d 156, 174-77 (Ala.1991) (Houston, J., concurring in the result); Pinto v. Alabama Coalition for Equity, 662 So.2d 894 (Ala.1995) (Houston, J., concurring in the result); Smith v. Schulte, supra (Houston, J., dissenting).
The majority opinion states:
"Against the constitutionality of § 12-21-45, Leahey argued, and the circuit court agreed, that it violates: the right to trial by jury as guaranteed by Ala. Const. 1901, § 11; the right to a remedy and to access to the courts as guaranteed by § 13; the constitutional guaranties of equal protection, see §§ 1, 6, and 22, and due process, §§ 6 and 13; and the principle of separation of powers as preserved by §§ 42 and 43."
681 So.2d at 1338.
Apparently, the majority opinion affirms on the basis that § 12-21-45 violates "the right to trial by jury as guaranteed by Ala. Const.1901, § 11" and "the constitutional guaranties of equal protection, see §§ 1, 6, and 22."
In my opinion, § 12-21-45 is not unconstitutional for any of the reasons offered by Leahey.
Section 6 of the Constitution relates to rights in criminal prosecutions ("That in all criminal prosecutions, the accused has a right to ..."). Section 12-21-45 has nothing to do with criminal prosecutions. Due process, which is guaranteed in civil trials by § 13 of the Constitution ("that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law"), guarantees a person notice,[9] a hearing according to that notice, and a judgment entered in accordance with the notice and hearing,[10]Ex parte Rice, 265 Ala. 454, 92 So.2d 16 (1957), and restricts the legislature from making unreasonable, arbitrary, and oppressive modifications of fundamental rights. Thompson v. Wiik, Reimer & Sweet, 391 So.2d 1016 (Ala.1980). I fail to see how § 12-21-45 violates the due process guaranty.
No remedy that Leahey had was curtailed after the injury had occurred and the right of action vested. Therefore, there was no violation of the right-to-a-remedy portion of § 13. Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939); Henley v. Rockett, 243 Ala. 172, 8 So.2d 852 (1942).
Likewise, Ala.Code 1975, § 12-21-45, does not violate the separation of powers doctrine (§§ 42 and 43) of the Constitution of Alabama of 1901. See Ex parte Foshee, 246 Ala. 604, 606-07, 21 So.2d 827 (1945).
"The supreme court shall make and promulgate rules governing ... practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party.... These rules may be changed by a general act of statewide application."
Amendment 328, § 6.11, Constitution of Alabama of 1901.
In my opinion, the legislature had the power to enact § 12-21-45. Whether it was expedient or wise for the legislature to enact this statute is not the judiciary's concern. Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 815 (1944).
HOOPER, C.J., and MADDOX, J., concur.
NOTES
[1] See Ala.Code 1975, § 6-6-227; Terry v. City of Decatur, 601 So.2d 949 (Ala.1992); Wallace v. State, 507 So.2d 466 (Ala.1987); Barger v. Barger, 410 So.2d 17 (Ala.1982).
[2] Note also that for product liability actions, if the collateral source payor is subrogated to the plaintiff's recovery, § 6-5-524 renders all of the evidence on the subject inadmissible, just as under the common law collateral source rule. This provision also starkly contrasts with § 12-21-45.
[3] Section 12-21-45 derives from Act No. 87-187, Ala. Acts 1987, whereas § 6-5-545 derives from Act No. 87-189, Ala. Acts 1987.
[4] Identical except that § 12-21-45(a) begins, "In all civil actions," whereas § 6-5-545(a) begins, "In all actions," meaning all medical liability actions, to which § 6-5-545 is limited.
[5] This Court has made passing references to § 12-21-45 in Clark v. Black, 630 So.2d 1012, (Ala.1993); Star Freight, Inc. v. Sheffield, 587 So.2d 946, 959, fn. 7 (Ala.1991) (§ 12-21-45 "may apply" in cases filed after June 11, 1987); and Powell v. Blue Cross & Blue Shield, 581 So.2d 772, 775, fn. 5 (Ala.1990). The Court of Civil Appeals once declined to address a constitutional challenge to § 12-21-45 because the plaintiff had not served the attorney general. Roszell v. Martin, 591 So.2d 511, 516-17 (Ala.Civ.App. 1991).
[6] The judgment of the California Court of Appeals in American Bank & Trust Co. was affirmed, but its holding of constitutionality was overturned in American Bank & Trust Co. v. Community Hospital, 36 Cal.3d 359, 204 Cal. Rptr. 671, 683 P.2d 670 (1984).
[7] The latter basis for a verdict omitting the subrogated amount would be improper, though perhaps rational, for several reasons: one, the insurer's calculation of the risk presumably factors in the possibility of subrogation; two, a conclusion that the plaintiff's insurer is the best party to bear the risk overlooks the fault of the defendant, which is the proper basis for assigning responsibility for the loss; and three, the jury would be basing its conclusion on the incomplete information indicating that the plaintiff is insured, without having the information indicating that the defendant is insured, as explained in the following paragraph of text.
[8] See, generally, Clark v. Container Corp. of America, Inc., 589 So.2d 184, 198-99 (Ala.1991) (Adams, J., concurring in the result); Moore v. Mobile Infirmary Ass'n, 592 So.2d 156 (Ala. 1991); Smith v. Schulte, 671 So.2d 1334 (Ala. 1995).
[9] See BMW of North America, Inc. v. Gore, ___ U.S. ___, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), discussing "notice" as a component of due process under the United States Constitution.
[10] "[A]ll courts shall be open" (§ 13, Constitution) to assure such hearing and resolution.