330 So.2d 426

**Samuel T. DUMAS, Jr., d/b/a Samuel Dumas Construction Co.**

**v.**

**DUMAS BROS. MANUFACTURING COMPANY, INC., a corp.**

**SC 1379.**

Supreme Court of Alabama.

April 2, 1976.

Hill, Hill, Carter, Franco, Cole & Black, and John M. Milling, Jr., Miller & Hoffman and H. E. Nix, Jr., Montgomery, Lee B. Williams, Grove Hill, for appellant.

Brown, Hudgens & Richardson, Alton R. Brown, Jr., Claude D. Harrell, Mobile, Wyman O. Gilmore, Grove Hill, for appellee.

**372**

Dumas Brothers Manufacturing Company, Inc. (Dumas Brothers) and against defendant Samuel T. Dumas, Jr., d/b/a Samuel Dumas Construction Company (Dumas).

We affirm.

### The Pleadings

The action for damages arose from destruction by fire of a building and its contents of furniture products, raw materials, supplies and equipment, all incident to plaintiff's furniture manufacturing business.

By its last amended complaint Dumas Brothers asserted the right to recover of Dumas for breach of duties arising from the relationship of the parties under an oral agreement whereby Dumas undertook construction of additions to premises of Dumas Brothers.

The breach of those duties was said to consist of negligence in causing the destructive fire by: (1) failing to warn a workman of the presence of highly flammable material at a place where defendant knew or should have known it to be and causing or permitting that workman to use a burning torch (to burn or cut metal) in close proximity to that material. (2) Defendant Dumas using or causing the torch to be used at the same place after defendant Dumas had been warned by plaintiff: Dumas Brothers against such use.

Issue was joined by answer. It was a denial (general issue) of the material allegations of the complaint and alleged contributory negligence upon the part of Dumas Brothers.

Dumas filed Motion for Directed Verdict on conclusion of the evidence. It was denied. Following verdict he filed Motion For Judgment Notwithstanding The Verdict, or in the alternative, Motion For New Trial. After a hearing of the latter motion, at which evidence was taken, the motion was denied. This appeal ensued.

EMBRY, Justice.

This appeal is from judgment on jury verdict for $234,000 in favor of plaintiff

## The Facts

Defendant Dumas entered into an oral agreement with plaintiff Dumas Brothers to make additions to a warehouse owned by the latter. Dumas was aware of the nature of the business (manufacture of furniture) engaged in by Dumas Brothers, the highly flammable nature of foam rubber used in that business and that such was stored in the warehouse to which he was making additions. Under the terms of the rather loosely defined oral agreement it appears there was an understanding that from time to time during construction Dumas could call upon Dumas Brothers for help from its employees, if needed, although any such employee would remain in the pay of Dumas Brothers.

The fire, the vortex of controversy in this case, originated in the ceiling of a building to which an addition was being constructed. Its cause was sparks falling from the site of a cut being made in metal by use of a cutting torch. Those sparks fell upon highly flammable foam rubber stored in the existing building. The torch was being used at the time by Jimmy Bayles who was on the payroll of Dumas Brothers. Dumas was there doing the cutting at the particular spot using a cutting torch under the following circumstances. When Dumas had embarked upon the job he was told by Dumas Brothers that it had a qualified welder and burner and that anytime he needed one to send and get him, not to hire one. Before the time at which the fire started Dumas had been told by Dumas Brothers not to use a cutting torch or cutting tool to cut the metal beams near the foam rubber.

Bayles had been sent to Dumas for the purpose of cutting with a torch upon Dumas' request for " * * * a man with a torch to do some burning." Dumas did not inform Dumas Brothers of the location of the spot where the "burning" was to be done—on the beam adjacent to where the foam rubber was stored in the warehouse. Dumas Brothers was not otherwise informed that such "burning" or cutting was to be at that spot. Dumas instructed Bayles where to cut. Dumas then left the situs of the cutting and was not present when the fire started. The facts recited in the foregoing summary were adduced from sharply conflicting evidence in the record about which there is heated disagreement expressed by the parties in their respective briefs.

## The Issues

The assignments of error present for review these issues: (A) On a hearing of the motion for judgment notwithstanding the verdict, or in the alternative for new trial, was it error to exclude an affidavit and testimony of a juror offered to impeach the verdict? (B) Did the giving of certain written jury instructions at the instance of Dumas Brothers injuriously affect the substantial rights of Dumas? (C) Did prejudicial error result from the failure of the trial court to hear and record the testimony of a juror offered to impeach the verdict?

There were other errors assigned but not urged, therefore we will not deal with them.

## A

On hearing of his motion for judgment n. o. v. or in the alternative for a new trial, Dumas offered the affidavit of a juror. In pertinent part it reads:

"* * * I was a member of the jury in the case of *Dumas Brothers Manufacturing Company, Inc., Vs. Samuel T. Dumas, Jr., d/b/a Samuel T. Dumas Construction Company*, which case was tried in the Circuit Court of Clarke County, Alabama, during the week of February 4, 1975. After the case was completed and we went to the jury room to decide the case, the discussion in the jury room was about insurance and that Samuel Dumas, the defendant, would not be hurt by any verdict which we might return against him for damages. The facts of the case were not discussed and

there was no discussion about Samuel Dumas being negligent or at fault. I did not and do not believe from the evidence which I heard that the fire which resulted in the lawsuit was in anyway the fault of Samuel Dumas. From the discussion about insurance in the jury room, I was led to believe that Samuel Dumas had plenty of insurance coverage and that he would not be liable for any part of the judgment which we returned against him. The only reason that I voted to return a verdict in the amount of $234,000.00 against Samuel Dumas was because of the fact that I believed from the discussion in the jury room that he had plenty of insurance coverage."

■ The law and public policy alike declare that affidavits of jurors with respect to occurrences in the jury room may not be received for the purpose of impeaching their own verdict. *Weekley v. Horn*, 263 Ala. 364, 82 So.2d 341. The basis for the rule is expressed in *Gulf States Steel Co. v. Law*, 224 Ala. 667, 141 So. 641, as follows:

" 'The court committed no error, when it declined to consider the affidavit of one of the jurors trying the case, who undertook to testify to his own and fellow jurors' action and conduct while considering the case. A due regard for the proper and orderly administration of the law, a proper regard for the solemnity of verdicts of jurors, as well as a sound public policy forbid that members of a jury, after they have made their deliverances in court, should be allowed to impeach their verdicts. To give consideration to such affidavits would tend to bring the law and its administration into disrepute. * * *.' "

quoting from *Weekley v. Horn*, supra.

■ Dumas contends the trial court erred in not accepting the juror's affidavit and testimony which exposed jury discussions during its deliberation. He says the case falls within an exception to the general rule. The exception is where the affidavit tends to show the *extraneous facts* which have influenced the verdict. Improper communications between jurors themselves are not extraneous influences or extraneous facts. *Weekley v. Horn*, supra. Dumas contends that the content of the affidavit here stating the jury failed to discuss the facts in evidence compels by inference the conclusion that what it discussed was necessarily extraneous facts. We cannot agree with this.

■ The affidavit offered revealed merely what was discussed during jury deliberation; liability insurance coverage. The affidavit was properly excluded. It only divulged the nature and content of the jury's deliberation. That, without regard to its propriety or lack of it, is not *extraneous*.

B

The written jury instructions given at the request of Dumas Brothers about which Dumas complains are:

Number Four (4)

"The Court charges the jury that in determining whether the general employer or one to whom the employee has been loaned is responsible for the employee's acts, he is to be deemed the employer who has the choice, control and direction of the employee in the service to be performed. If the jury is reasonably satisfied from the evidence in this case that at the time of the occurrence of the fire alleged in the complaint, Jimmy Bayles was then and there performing duties which in all details were according to the choice of and under the control and direction of the defendant, Samuel T. Dumas, in that event your determination should be that Jimmy Bayles was then and there acting as the employee or servant of the defendant, Samuel T. Dumas; and the Court further charges you that if you are reasonably satisfied by the evidence in this case that alleged fire was the direct and proximate result of the negligence of Jimmy Bayles in per-

forming his work at that time and that Plaintiff's damage, as claimed in this case, proximately resulted from that negligence, then your verdict should be for the plaintiff."

### Number Five (5)

"The Court charges the jury that an employee may be in the general service of one person or firm and nevertheless with respect to some particular work may be transferred to the service of another person or firm in such way that the employee becomes, for the time being, the servant or employee of such other person or firm. In such cases, in determining the question whether the employee at a particular time is the employee of his general employer or that of the person or firm to whom his services have been lent, consideration should be given to the matter of whose work the employee is performing and under whose control he is performing that work at the time in question. It is the right to control the performance of the work at the time in question that determines the employer-employee relation. If you are reasonably satisfied by the evidence in this case that at the time of the fire alleged in the complaint, Jimmy Bayles was then and there performing services for the defendant, Samuel T. Dumas, and who at that time had the right to control Jimmy Bayles in the performance of those services, and if you are further reasonably satisfied by the evidence that Jimmy Bayles was negligent in the performance of those services and that as a direct and proximate result of such negligence, a fire was caused to destroy or damage the building and personal property of the plaintiff, then your verdict should be for the plaintiff."

### Number Six (6)

"The Court charges the jury that when one person or firm lends his employee to another for a particular employment, that employee, for anything done in that employment, must be considered as being the employee of him to whom he is lent, and this is true although he remains the general servant of the person or firm who lent him. However, for that result to obtain the person or firm to whom the employee is lent must have the right to control the employee in the performance of the work. It is the right to control the performance of the work at the time in question that determines the employer-employee relation. If you are reasonably satisfied by the evidence in this case that at the time of the fire alleged in the complaint, Jimmy Bayles was then and there performing services for the defendant, Samule (sic) T. Dumas, and who at that time had the right to control Jimmy Bayles in the performance of those services, and if you are further reasonably satisfied by the evidence that Jimmy Bayles was negligent in the performance of those services and that as a direct and proximate result of such negligence, a fire was caused to destroy or damage the building and personal property of the plaintiff, then your verdict should be for the plaintiff.

### Number Seven (7)

"The Court charges the jury that one who by his contract or by law is due certain obligations to another cannot divest himself of liability for a negligent performance of those obligations by employing another to perform those obligations for him; and if the jury is reasonably satisfied by the evidence in this case that the fire and resulting damages to the property of the plaintiff as complained of, was the direct and proximate consequence of the negligence, as I have defined that term to you, of the defendant or of someone acting for the defendant and in his stead in the performance of obligations owing by defendant to the plaintiff, then your verdict should be for the plaintiff."

## 376

### Number Eight (8)

"If the jury is reasonably satisfied by the evidence that at the time and place alleged in the complaint, the defendant, Samuel T. Dumas, had the right to direct Jimmy Bayles and that Jimmy Bayles was then and there obeying the orders of the defendant, Samuel T. Dumas, and while so doing, a fire was ignited, or caused to occur, by negligence on the part of Jimmy Bayles, which proximately resulted in damage to the building and personal property of the plaintiff, then I charge you the plaintiff ought to have damages in such sum as the evidence entitles him to."

### Number Nine (9)

"The Court charges the jury that the payment of compensation is an incident merely and is not an essential element in the creation of the legal relation of employer and employee. The essentials to create that relation are: the voluntary rendition of service by the employee; its acceptance by the employer, and the right of the employer to direct and control the employee in the performance of the service for the employer. If you, the members of the jury, are reasonably satisfied by the evidence that at the time and place the fire alleged in this case occurred, Jimmy Bayles was rendering service for the defendant, Samuel T. Dumas, who and at that time and place had the right to direct and control Jimmy Bayles in the performance of the service Jimmy Bayles was then and there performing, the Court charges you that Jimmy Bayles at said time and place was, in contemplation of law, the employee of the defendant, Samuel T. Dumas, and the fact that the defendant did or did not pay compensation directly to Jimmy Bayles for those services does not alter or change that relation of employer-employee."

■ Dumas claims that each of the charges are incurable misstatements of the

law misdefining the "loaned servant" doctrine. In support he cites *Lucas v. Kirk*, 275 Ala. 20, 151 So.2d 744. On request of Dumas the following written charges were given:

### Number Two (2)

"I charge you that if you are reasonably satisfied from the evidence in this case that Dumas Brothers Manufacturing Company, Inc., had the reserved right of control over Jimmy Bayles at the time he was working at the building site where the fire occurred, then Jimmy Bayles was acting within the line and scope of his employment with Dumas Brothers Manufacturing Company, Inc., at such time."

### Number Three (3)

"I charge you that if you are reasonably satisfied from the evidence that Dumas Brothers Manufacturing Company, Inc., assumed the duty of providing a person to operate a torch cutter when needed by Samuel T. Dumas, Jr., then Dumas Brothers Manufacturing Company, Inc., assumed the duty of providing a person to operate such torch cutter who was reasonably competent and would take reasonable safety precautions in the operation of a torch cutter."

### Number Four (4)

"I charge you that if you are reasonably satisfied from the evidence that Dumas Brothers Manufacturing Company, Inc., undertook the responsibility of providing a person to operate a torch cutter when needed by Samuel T. Dumas, Jr., then Samuel T. Dumas, Jr., had the right to assume that Dumas Brothers Manufacturing Company, Inc., would send a person who was competent and would take reasonable safety precautions in the operation of a torch cutter."

### Number Five (5)

"I charge you that if you are reasonably satisfied from the evidence in this case that Jimmy Bayles was an employee of Dumas Brothers Manufacturing Company, Inc., and was working within the line and scope of his employment with Dumas Brothers Manufacturing Company, Inc., at the time of the incident concerned, and if you are further reasonably satisfied from the evidence in this case that Jimmy Bayles was guilty of any negligence which proximately contributed, even in the slightest degree, to the fire damage complained of, then you cannot return a verdict against Samuel T. Dumas, Jr."

### Number Thirteen (13)

"I charge you that the mere fact that Samuel Dumas gave information and directions to Jimmy Bayles as to the details of the work or the manner of doing it does not make Jimmy Bayles the servant or employee of Samuel Dumas."

### Number Fourteen (14)

"I charge you that if you are reasonably satisfied from the evidence in this case that Dumas Brothers Manufacturing Company, Inc., had the authoritative direction and control of Jimmy Bayles on the occasion concerned, and if you are further reasonably satisfied from the evidence that Samuel Dumas merely suggested to Jimmy Bayles the details or the necessary cooperation for the performance of the work furnished, then Jimmy Bayles was the employee of Dumas Brothers Manufacturing Company on such occasion and was not the employee of Samuel Dumas so as to hold Samuel Dumas liable for any negligence on the part of Jimmy Bayles."

In the court's oral charge we find:

"* * * who was Jimmy Bayles acting for as agent on that occasion? Was he acting for the plaintiff, Dumas Brothers Manufacturing Company, or was he acting for the defendant, Samuel T. Dumas, Jr.? And also, if he was acting for either of them, was he acting within the line and scope of his employment or agency, or acting as agent, servant, or employee of his principal.

"Now, in connection with agency, the Court charges you an agent is a person who by agreement with another, called the principal, acts for the principal and is subject to his control. This agreement may be oral or written or implied from the conduct of the parties, and may be with or without compensation. * * *

* * * * * *

"* * * Now, mind you, either one could be acting through their agents, servants, or employees on that occasion, the defendant or the plaintiff, and the plaintiff or the defendant, if you find that this witness, Jimmy Bayles, was an agent then you would have to say who he was acting for. * * *"

The specific omissions which result in written charges of Dumas Brothers being incurable erroneous statements of law, according to Dumas, is the failure to qualify the word "control" by the words "reserved right of" and the failure to include the word "consensual" in describing the necessary consent, agreement or acquiescence of Bayles to be a "loaned servant" of Samuel Dumas. Admittedly these charges may not be the most carefully drafted, complete and precise statements of the factors to be considered by the jury in deciding whether, on the occasion, Bayles was a "loaned servant" of Dumas. On the other hand when one looks at the totality of the instructions by which the jury was guided in its resolution of this issue then the claimed defects in them assume Lilliputian proportions. *Lucas* is not apt, rather is Rule 51, ARCP. *Taylor v. Owen,* 294 Ala. 543, 319 So.2d 672. The totality of the jury instruction, oral and written was legally sufficient and the evidence adequate to authorize the jury to conclude that Bayles was the "loaned servant" of Dumas.

The ultimate test is whose work was the servant doing at the time the complained of act was committed and under whose control was he doing it? *Martin v. Anniston Foundry Co.,* 259 Ala. 633, 68 So.2d 323.

Plaintiff's and defendant's given requested charges taken together and in conjunction with the whole of the court's oral charge does not, therefore, constitute reversible error. Error, if any, is error without injury since the charges viewed as an entity did not injuriously affect the substantial rights of Dumas. ARAP 45.

### C

■ Dumas contends the trial court erred in not hearing and recording the testimony of a juror offered to impeach the verdict. He relies on Rule 43(c), ARCP in that part:

> "* * * the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground * * *"

This gives Dumas the opportunity to place in the record what he was not allowed to adduce at the hearing of the post judgment motion unless "* * * it clearly appears that the evidence is not admissible on any ground * * *."

The court allowed Dumas to make a showing of what he expected to prove by the juror's testimony. After making that offer by reading the affidavit, counsel for Dumas asked the juror:

> "When you went into the jury room what was the topic of discussion, and what statements did you hear made in the jury room?"

Dumas Brothers immediately objected and the court correctly sustained that objection. Such testimony is clearly not admissible on any ground. *Weekley v. Horn,* supra.

AFFIRMED.

HEFLIN, C. J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.