ALMON, Justice.
This is a medical malpractice case. The jury returned a verdict for the defendants, Dr. Richard F. Smith and Vestavia Pediatrics, P.A., and the trial court entered judgment on the verdict. The issues are whether the trial court erred in denying a motion for new trial based on alleged juror misconduct or in sustaining an objection to a question during plaintiffs’ rebuttal examination of one of their witnesses.
Zsolt G. Batizy filed this suit individually and as next friend of his minor son, William Brandon Batizy. Dr. Smith, as pediatrician for Brandon, examined him shortly after his birth and periodically thereafter. Dr. Smith examined Brandon when Brandon was 12 months old and again when he was 15 months old. Brandon began walking when he was 13 months old, and when Dr. Smith examined him at 15 months, Dr. Smith diagnosed a congenital hip dislocation. The alleged malpractice was the failure to diagnose the hip dislocation at an earlier visit.
Dr. Smith[1] answered, inter alia, that Mr. Batizy and his wife were negligent in failing to inform Dr. Smith that Brandon was walking improperly as soon as they observed that fact, “and that such delay contributed to proximately cause any damage complained of by Zsolt Batizy.” In his motion for new trial, Mr. Batizy alleged that the verdict was “based on extraneous facts and evidence, and not based on legal evidence properly introduced and admitted into evidence by the Court.” The motion also argued that the jury improperly based its verdict on an imputation to Brandon of his parents’ alleged contributory negligence.
In support of the motion, Mr. Batizy filed the affidavits of two jurors tending to show that the jury returned its verdict for the defendants because of the parents’ delay in taking Brandon to Dr. Smith as soon as he showed difficulty in walking. Mr. Batizy acknowledges that jurors’ affidavits normally are not allowed to impeach their verdicts, but attempts to fit this case within the exception regarding “consideration of extraneous factors which have influenced the verdict.” He cites Hallmark v. Allison, 451 So.2d 270 (Ala.1984); Whitten v. Allstate Ins. Co., 447 So.2d 655 (Ala.1984); and Nichols v. Seaboard Coastline Ry., 341 So.2d 671 (Ala.1976).
Dr. Smith counters that cases such as Dumas v. Dumas Bros. Mfg. Co., 295 Ala.370, 330 So.2d 426 (1976), and Weekley v. Horn, 263 Ala. 364, 82 So.2d 341 (1955), establish that “the nature and content of the jury’s deliberation” are not extraneous facts within the meaning of the rule. See also Fabianke v. Weaver, 527 So.2d 1253 (Ala.1988). The affidavits in the instant case do not show any consultation of outside sources, as in Nichols, and they so clearly relate to the jury’s deliberations that no further discussion is necessary to show that the trial court did not err in denying the motion for new trial in this respect.[2]
Mr. Batizy’s second argument is that the trial court erred in sustaining an objection and in refusing to grant a new trial to correct that error. The exchange took place during the examination of Dr. David Abramson, an expert witness called to the stand by Mr. Batizy. Dr. Smith’s attorney cross-examined Dr. Abramson regarding his connection to Medical Legal Consulting Company:
“Q. And this was a company, was it not, that you went to work for that advertised in magazines and solicited medical malpractice cases?
“A. I’m not sure. It was a company designed basically to break what was then called the conspiracy of silence. It was a company that realized that people, even who had a legitimate need for expertise, especially medical expertise, frequently couldn’t get it. The doctors were very reluctant to come in court and *796 talk, because it’s not normally the place for doctors.
“And this company felt that that was very important, and made it as a company policy to make available to defense lawyers like yourself, or insurance carriers, or plaintiff’s lawyers, like Mr. Samples, appropriate unbiased medical testimony, a doctor with academic credentials, usually someone like myself, who writes in the literature, who heads major departments in major universities, to review cases, give honest opinions; and if necessary, even come into court and say so publicly.
“Mr. Harris: Your Honor, that’s not responsive to my question, and I would request an instruction to the witness that he not give a self-serving speech.
“The Court: Well, if you will, Doctor, just listen to his question and answer his question.
“Q. You said the so-called conspiracy of silence, yet you said you testified for doctors, too?
“A. Yes, sir.
“Q. What did that have to do with a conspiracy of silence when you hired yourself out to testify for doctors? Was there a conspiracy of silence against doctors?
“A. I think the conspiracy of silence was much more ... on the other side.
“Q. What did testifying for defendant physicians have to do with the conspiracy of silence?
“A. The belief of that company, and, again, I’m not a part of that company, but the belief of that company was that the laws of this land are such that to deal with the malpractice action or something like that it requires expert testimony, and that the courts need expert testimony. That company undertook to provide high quality unbiased expert testimony for either side, whichever was the side that was appropriate.”
On redirect examination of Dr. Abram-son, the following transpired:
“Q. Tell the jury what the conspiracy of silence is.
“Mr. Harris: I object to that. That's not relevant and material.
“Mr. Samples: He went into it. He opened the door.
“Mr. Harris: He went into it when he was making one of his speeches.
“The Court: Sustained.”
Mr. Batizy argues that the question sought to rehabilitate Dr. Abramson’s credibility after it had been attacked by Dr. Smith, and that the trial court erred in sustaining the objection. He argues further that the defense opened the door to this line of questioning by asking three questions about the “conspiracy of silence.” Finally, Batizy argues that, because Dr. Smith’s attorney emphasized in his closing argument that Dr. Abramson was a paid professional expert witness, Ba-tizy’s case was prejudiced by the disallowance of testimony that would have explained the necessity for such witnesses.
It is within the discretion of the trial court, however, to allow or disallow testimony on rebuttal. Gulf Refining Co. v. First National Bank of Mobile, 270 Ala. 351, 119 So.2d 1 (1960). The court did not abuse its discretion here; further testimony on any “conspiracy of silence” by doctors not to testify against each other could have been excluded here on any of several grounds. For one thing, the mention of it by Dr. Abramson was in a non-responsive answer and, for another, he adequately presented his view that people who needed expert medical testimony “frequently couldn't get it." Evidence of such a “conspiracy of silence” would not be inherently admissible, and it was Mr. Batizy’s witness who self-servingly introduced it. Thus, Dr. Smith did not open the door to such evidence, but rather, the succeeding questions responded to Dr. Abramson’s mention of the phrase.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.

. We shall omit reference to Vestavia Pediatrics as a party unless the context requires it.

. No contention is made that the trial court erred in instructing the jury on contributory negligence; Mr. Batizy has not even designated the court’s oral charge as part of the record on appeal.