Dixie Marsh appeals from a judgment entered on a jury verdict in favor of W. Rodgers Green, M.D., in her medical-malpractice action against Dr. Green. We reverse and remand.
In February 1993, Marsh discovered a mass in her left breast. She had a mammogram, but it did not reveal the mass. However, the mammogram did reveal the presence of microcalcifications, which can suggest the early stages of a malignancy. Marsh consulted Dr. Green, who is a surgeon. On March 12, Dr. Green performed a biopsy and excised certain tissue for examination. The excised tissue was delivered to Pathology Laboratory Associates, P.A. ("the Laboratory"), where Dr. Brian C. Wenzel, a pathologist, examined it. Dr. Wenzel reported to Dr. Green that the tissue examined was not malignant. Dr. Green reported to Marsh that she did not have a malignancy.
A mass in Marsh's breast still was present, however, and she continued to see Dr. Green throughout the summer of 1993. Marsh says that during a postoperative examination on March 19, Dr. Green noted that there was still a mass in her breast and told her to return in six months or sooner if problems arose. She says that she visited his office on April 12, complaining of a painful lump in her breast, and that he told her to return in three months for a mammogram to determine whether he should excise the mass. She says that when she saw Dr. Green on May 7, still concerned about the mass, he told her that her pain resulted from fibrocystic disease and a small nodule in her left breast and also told her that he did not think the nodule was cancerous. Marsh stated that Dr. Green discussed with her the possibility of proceeding with a biopsy at that time or returning in September and then having a mammogram. She also stated that Dr. Green told her that even if the mass was cancerous, waiting four or five months would make no difference in her prognosis.
On September 28, Dr. Green removed the mass from Marsh's breast. A biopsy of that tissue revealed the presence of infiltrating ductal cell carcinoma. Nineteen of 22 lymph nodes biopsied tested positive for cancer. Marsh underwent a mastectomy, chemotherapy, and other treatment, including a bone-marrow transplant.
On March 10, 1995, Marsh, acting pro se, sued Dr. Green; his professional corporation, W. Rodgers Green, M.D., P.C. (the trial court dismissed the corporation; it is not a party to this appeal); and fictitiously named defendants, alleging that Dr. Green had committed medical negligence in failing to remove the cancerous mass from her breast. Marsh also alleged, among other things, that Dr. Green's negligence combined and concurred with the negligence of the fictitiously named defendants to allow her cancer to spread, and that she suffered injuries as a direct or proximate result of the combining and concurring negligence on the part of Dr. Green and the agents, servants, and employees of Dr. Green and his professional corporation. She filed her complaint within two years of the March 12, 1993, surgical procedure.
Initially, Marsh did not sue Dr. Wenzel or the Laboratory. Marsh deposed Dr. Green three years and two months after the date of the initial biopsy. By the time she took Dr. Green's deposition, she was represented by counsel. During his deposition, he testified that at the time of the initial biopsy he could not find, and did not remove, the mass that later was found to *Page 226 
be cancerous; that, at that time, the breast tissue looked normal and not cancerous; and that the tissue he removed for analysis was not cancerous. The pathology report from Dr. Wenzel stated that the entire specimen had been submitted for microscopic examination and that it was benign.
While March's action was pending, Dr. Wenzel and the Laboratory continued to recut slides of the tissue removed during Marsh's initial biopsy. These slides were given to Dr. Green and his experts. Dr. Wenzel reexamined the tissue in September when Marsh's cancer was discovered, some six months after the initial biopsy; he did so again two years and nine months after the initial biopsy and three years and eight months after the initial biopsy. He remained satisfied with the accuracy of his initial report and so advised Dr. Green. However, approximately one month after the expiration of the four-year limitations period during which an action alleging medical negligence could be commenced, Dr. Wenzel detected for the first time the presence of cancerous tissue in specimens removed during Marsh's initial biopsy.
Dr. Green immediately contradicted his deposition testimony by amending his answers to interrogatories to state that the tissue removed during the initial procedure indeed had been cancerous. Marsh then deposed Dr. Wenzel. On June 3, 1997, Marsh amended her complaint to charge Dr. Wenzel and the Laboratory with medical negligence in failing to detect the cancerous tissue. Marsh's amended complaint included allegations that the Laboratory had breached a fiduciary duty to her and had breached an implied contract when it disseminated slides of her tissue without her knowledge or consent.
Dr. Wenzel and the Laboratory moved for a summary judgment, arguing that the limitations period had run and Marsh's claims were time-barred and, further, that the allegations relating to the dissemination of her tissue were insufficient, as a matter of law, to be actionable. The trial court entered a summary judgment in favor of Dr. Wenzel and the Laboratory on both grounds argued, and it certified the summary judgment as final pursuant to Rule 54(b), Ala.R.Civ.P. We affirmed the judgment, holding that, as to Marsh's medical-negligence claims, the doctrine of relation back was not available to her because she had known Dr. Wenzel's identity before the four-year statute-of-limitations period expired. We also affirmed the judgment as to Marsh's claims alleging breach of a fiduciary duty and breach of an implied contract. See Marshv. Wenzel, 732 So.2d 985 (Ala. 1998).
Marsh's claims against Dr. Green proceeded to trial. At trial, he testified that his treatment of Marsh was within the standard of care observed by surgeons under like circumstances. Dr. Green presented the testimony of two surgeons as expert witnesses; they also testified that his treatment of Marsh was within the standard of care. Dr. Michael Meshad testified that, even if Marsh's cancer had been detected in March 1993, a mastectomy still would have been necessary because her cancer had metastasized before her March 1993 visit with Dr. Green.
At trial, Dr. Green admitted that, after he saw the initial pathology report, he told Marsh that there was only a one-percent chance that she had cancer, but he said during his testimony that he had no medical basis for making such a statement. He acknowledged telling Marsh that waiting four or five months would not affect her prognosis, even if she had cancer. Dr. Green also testified that, if he had known in March that the mass was malignant, he would not have told her to wait until September. *Page 227 
Marsh submitted to the trial court instructions 28.04 and 28.05,Alabama Pattern Jury Instructions: Civil (2d ed. 1993), on the law of combining and concurring negligence, as well as the following charge taken from Phillips v. Anesthesia Services, P.C., 565 So.2d 127 (Ala. 1990):
 "`If one is guilty of negligence which concurs or combines with the negligence of another and the two combine to produce injury or damage, each negligent person is liable for the resulting injury or damage, and the negligence of each would be deemed the proximate cause of the injury.'"
Id. at 128 (quoting from a jury charge requested in that case by the plaintiff Phillips). The trial court refused to give those charges. The jury returned a verdict for Dr. Green, and the court entered a judgment on that verdict. Marsh appeals.
 I. Sufficiency of the Evidence to Support the Verdict
Marsh argues that the verdict is against the great weight of the evidence because Dr. Green admitted that he gave medical advice that caused her to delay and thereby allow the cancer to spread. Specifically, Marsh contends that one of her medical-malpractice claims against Dr. Green was based upon undisputed evidence indicating that he told Marsh that, even if the mass was cancerous, waiting four or five months to treat it would not be detrimental. Jury verdicts carry a presumption of correctness. We decline to substitute our judgment for that of the jury in matters dealing with credibility of witnesses and weight of the evidence. See Ford Motor Co. v. Burdeshaw, 661 So.2d 236, 238 (Ala. 1995); Delchamps, Inc. v. Larry, 613 So.2d 1235, 1239 (Ala. 1992). The issues whether Dr. Green complied with the standard of care and whether delay contributed to Marsh's injuries were sharply contradicted at trial. We cannot say the trial court erred in denying Marsh's motion for a new trial on the ground that the verdict was against the weight of the evidence.
 II. Applicability of the Doctrine of Combining and Concurring Negligence
Marsh argues that the trial court erred in refusing to charge the jury on the law of combining and concurring negligence. Under the law of combining and concurring negligence, Dr. Green can be liable for his own negligence, notwithstanding the fact that others, who are not his agents, could be liable for their own negligence. See Davison v. MobileInfirmary, 456 So.2d 14, 25 (Ala. 1984). Marsh contends that she was entitled to instructions on combining and concurring negligence because Dr. Green had blamed Dr. Wenzel for Dr. Green's failure to diagnose the cancer. At trial, after Dr. Green said he was not "blaming Dr. Wenzel of anything," Marsh specifically asked Dr. Green, "But you're saying it's his fault that you didn't take the mass out; aren't you?" No objection was interposed on the ground that Dr. Green was not qualified to answer a question concerning the standard of care owed by a pathologist. Dr. Green answered, "There was an error in his path report, yes." During closing argument, Dr. Green stated, "I understand that Dr. Wenzel comes in here with some baggage. I understand about the mistake he made. I know that. I understand that. . . ." By characterizing the conduct of Dr. Wenzel, Marsh contends that Dr. Green placed the question of combining and concurring negligence at issue.
In Atkins v. Lee, 603 So.2d 937 (Ala. 1992), Charles and Glendon Lee sued Children's Hospital and Dr. Colby Atkins, a resident doctor at the hospital, alleging that they had wrongfully caused the death *Page 228 
of the Lees' son. The jury returned a verdict against Dr. Atkins and Children's Hospital in the amount of $6,875,000. The trial court entered a judgment on that verdict. On appeal, Dr. Atkins argued that the trial court had erred in giving the following jury charge:
 "If you are reasonably satisfied from the evidence in this case that Dr. Atkins was negligent and [that] his negligence concurred and combined with the negligence of a third person, not a party to this suit, to cause the death of Charles Lee, Jr., that fact would not relieve the defendant, Dr. Atkins, from liability for his own negligence and the plaintiff would be entitled to recover from the defendant."
Id. at 943. Dr. Atkins argued that "`[t]here was no evidence presented at trial that raised an issue of concurring and combining negligence of a third person not a party to the lawsuit.'" Id. (quoting from Dr. Atkins's brief). This Court noted that the record was replete with testimony regarding the conduct of the nurses assigned to the Lees' son, relative to the procedures and standards used to treat the patient, and it concluded that the jury instruction did not provide a basis for reversing the judgment. Although Atkins v. Lee was decided before the Medical Liability Act ("MLA") was enacted, it illustrates that a defendant doctor's blaming other health-care providers, the nurses in that case, can make the question of combining and concurring negligence an issue.
The MLA specifies the plaintiff's burden of proof in a medical-malpractice action. Section 6-5-548(a), Ala. Code 1975, reads:
 "In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case."
If a physician injects the fault of another health-care provider not similarly situated to him, can that physician avoid making combining and concurring negligence an issue by pointing to the requirements of §6-5-548(a), requiring proof of the breach of the standard of care by evidence from a similarly situated health-care provider, and attacking the evidence as lacking in this respect? We answer this question in the negative.
The MLA was enacted to protect the public from increased costs. §6-5-540. The MLA does so by imposing strict standards on actions against health-care providers. Clearly, it functions as a shield. To permit a health-care-provider defendant to inject the alleged fault of another health-care provider from a different specialty and then avoid any instruction on combining and concurring negligence by insisting upon the proof requirement of § 6-5-548(a) would allow the defendant to use the statute as a sword, not a shield. We analogize this circumstance to "opening the door," the situation where allowing or offering inadmissible evidence makes matters relevant that otherwise the factfinder would not be able to consider. See Charles W. Gamble,McElroy's Alabama Evidence, § 14.01 (5th ed. 1996).
Because he presented evidence characterizing Dr. Wenzel as at fault and injected an argument about Dr. Wenzel's alleged mistake, notwithstanding other testimony in which he disclaimed any attempt to blame Dr. Wenzel, Dr. Green should be estopped to insist on strict application of the § 6-5-548(a) standard of proof as to Dr. Wenzel's conduct. Dr. Green also argues *Page 229 
that the requested instruction was defective because it was not cast in terminology consistent with the concept of medical malpractice as described in the MLA, as opposed to concepts of traditional negligence. Having used terms such as "fault" and "mistake" to describe Dr. Wenzel's conduct, however, Dr. Green cannot now insist on the more sophisticated terminology used in the MLA.
If the trial court had charged the jury on combining and concurring negligence, then the jury would have been better equipped to deal with the ignorance of Dr. Green that was caused by Dr. Wenzel's negligence when combining with evidence of negligence on the part of Dr. Green. As previously noted, Marsh also argues that the verdict is against the great weight of the evidence because, she argues, Dr. Green admitted that he gave medical advice that caused her cancer to spread. While we have declined to reverse the judgment for the trial court's failure to grant a new trial as to this issue, we refer to Marsh's contention at this juncture to illustrate the existence of substantial evidence in support of Marsh's claims against Dr. Green. By failing to permit Marsh to argue and to have a jury instruction on combining and concurring negligence, the trial court allowed the jury to give inappropriate weight to Dr. Green's defense based upon his ignorance of the existence of cancer. Because the trial court erred in refusing to give the jury an instruction on combining and concurring negligence, when such a charge was appropriate, based on the testimony and argument of Dr. Green, we must reverse and remand for a new trial.
 III. Admissibility of Evidence of a "Conspiracy of Silence"
Because we order a new trial, we address other issues that will probably arise again. Marsh argues that the trial court abused its discretion in granting Dr. Green's motion in limine so as to preclude Marsh from introducing evidence that she says tends to prove a "conspiracy of silence" within the Mobile medical community. Marsh argues that, because there is a conspiracy of silence, she could not retain a qualified local medical expert and was forced to hire an out-of- state expert. She contends that by granting Dr. Green's motion in limine, the court prevented her from introducing a compilation of letters that her expert, Dr. Joseph G. Bussey, Jr., wrote and sent to Mobile physicians, briefly summarizing the case and asking the physicians to review the case. Marsh stated that Dr. Bussey received only two responses, one of which was marked "not interested." The other response Dr. Bussey received stated, "I feel certain that I am aware of the case you are referring to in your correspondence, and I do not feel the standard of care in treating this breast mass was violated. Therefore, I will not be of any help in reviewing this case." When Marsh offered these letters as evidence at the conclusion of Dr. Bussey's testimony, the trial court refused to admit these letters as a plaintiff's exhibit but made them a court's exhibit to the record. In addition, Marsh argues that the trial court did not allow her to ask one of Dr. Green's experts, Dr. Michael Meshad, whether he knew of any Mobile doctor who had testified against another Mobile doctor.
Marsh relies on Trull v. Long, 621 So.2d 1278 (Ala. 1993), in support of her argument that the trial court erred in granting Dr. Green's motion in limine. Her reliance is misplaced. In Trull, this Court held that the trial court did not abuse its discretion in refusing to allow the plaintiff's expert witness to testify concerning an alleged conspiracy of silence when a *Page 230 
proper predicate had not been laid for admission of evidence relating to such an alleged conspiracy. In so holding, the Court discussed Batizyv. Smith, 530 So.2d 794, 796 (Ala. 1988), and stated that although it had affirmed the trial court's ruling in Batizy, it did not intend to hold in that case that evidence of a conspiracy of silence would not be admissible under any circumstances. Trull, 621 So.2d at 1281.
We do not find that Dr. Bussey's letters and the responses or lack thereof provide a sufficient predicate for showing a "conspiracy of silence." Therefore, we hold that the trial court did not abuse its discretion in refusing to allow Marsh to introduce this evidence of speculative probative value.
 IV. Constitutionality of the Statute Abrogating the Collateral
Source Rule (§ 6-5-545, Ala. Code 1975).
Marsh argues that the trial court erred in denying her motion to declare § 6-5-545, Ala. Code 1975, unconstitutional.[1] Section6-5-545 provides:
 "(a) In all actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence. In such actions upon admission of evidence respecting reimbursement or payment of medical or hospital expenses, the plaintiff shall be entitled to introduce evidence of the cost of obtaining reimbursement or payment of medical or hospital expenses.
 "(b) In such civil actions, information respecting such reimbursement or payment obtained or such reimbursement or payment which may be obtained by the plaintiff for medical or hospital expenses shall be subject to discovery.
 "(c) Upon proof by the plaintiff to the court that the plaintiff is obligated to repay the medical or hospital expenses which have been or will be paid or reimbursed, evidence relating to such reimbursement or payment shall be admissible."
Section 6-5-545 abolished in medical-malpractice cases the common-law rule known as the "collateral-source rule." That rule has been explained as follows:
 "Thus, the courts generally have held that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. This is known as the `collateral source rule.' Under it, the wrongdoer cannot take advantage of the contracts or other relation that may exist between the injured person and third persons. Thus, while a plaintiff's recovery under the ordinary negligence rule is limited to damages which will make him whole, the collateral source rule allows a plaintiff further recovery under certain circumstances even though he has suffered no loss."
22 Am. Jur.2d Damages § 566 (1988) (citations omitted).
This Court first articulated the collateral-source rule in Long v.Kansas City, M. B. R.R., 170 Ala. 635, 54 So. 62 (1910), and it thereafter consistently held collateral-source evidence inadmissible. See, e.g., Gribble v. Cox, 349 So.2d 1141, 1143 (Ala. 1977); Carlisle v.Miller, 275 Ala. 440, 444, 155 So.2d 689, 691 (1963); Vest v. Gay,275 Ala. 286, 289, 154 So.2d 297, 299-300 *Page 231 
(1963); Sturdivant v. Crawford, 240 Ala. 383,385, 199 So. 537, 538 (1940).
Marsh argues that § 6-5-545 violates her equal-protection and due-process rights because it treats medical-malpractice cases differently from cases based on other torts. She bases her argument on this Court's holding in American Legion Post No. 57 v. Leahey,681 So.2d 1337 (Ala. 1996). In Leahey, a divided court struck down § 12-21-45, a statutory companion to § 6-5-545. The majority opinion summarized its dissatisfaction with § 12-21-45:
 "Thus, these three points — the apparent attempt to change the law of evidence without expressing the effect on the law of damages, the prejudicial effect on the subrogation rights of a plaintiff's insurer, and the admission into evidence of the fact that the plaintiff is insured without a concomitant admission of evidence that the defendant is insured — present serious problems to the constitutionality of the statute."
681 So.2d at 1346. These concerns deal with the wisdom of legislative policy rather than constitutional issues. Matters of policy are for the Legislature and, whether wise or unwise, legislative policies are of no concern to the courts. State ex rel. Wilkinson v. Murphy, 237 Ala. 332,186 So. 487 (1939). In Alabama State Federation of Labor v. McAdory,246 Ala. 1, 18 So.2d 810 (1944), cert. dismissed, 325 U.S. 450 (1945), this Court held that a court cannot hold a statute invalid because of its view that "there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen." 246 Ala. at 9, 18 So.2d at 815.
When this Court struck down § 12-21-45 in Leahey, supra, Justice Houston, one of three dissenting Justices, wrote:
 "I dissent from the holding that Ala. Code 1975, § 12-21-45, violates the right to trial by jury guaranteed by the Constitution of Alabama of 1901, § 11. See Henderson v. Alabama Power Co., 627 So.2d 878, 903-14 (Ala. 1993) (Houston, J., dissenting); Ex parte Giles, 632 So.2d 577, 587-89
(Ala. 1993) (Houston, J., concurring in the result), cert. denied, [512 U.S. 1213] (1994); Smith v. Schulte, 671 So.2d 1334 (Ala. 1995) (Houston, J., dissenting), cert. denied, [517 U.S. 1220] (1996); Ex parte Jackson, 672 So.2d 810 (Ala. 1995) (Houston, J., concurring in the result); Ex parte Foshee, 246 Ala. 604, 606-07, 21 So.2d 827 (1945); and Amendment 328, § 6.11, Constitution of Alabama of 1901.
 "I dissent from the holding that Ala. Code 1975, § 12-21-45, violates the `phantom' equal protection clause in the Constitution of Alabama of 1901. See Moore v. Mobile Infirmary Association, 592 So.2d 156, 174-77 (Ala. 1991) (Houston, J., concurring in the result); Pinto v. Alabama Coalition for Equity, 662 So.2d 894 (Ala. 1995) (Houston, J., concurring in the result); Smith v. Schulte, supra (Houston, J., dissenting).
"The majority opinion states:
 "`Against the constitutionality of § 12-21-45, Leahey argued, and the circuit court agreed, that it violates: the right to trial by jury as guaranteed by Ala. Const. 1901, § 11; the right to a remedy and to access to the courts as guaranteed by § 13; the constitutional guaranties of equal protection, see §§ 1, 6, and 22, and due process, §§ 6 and 13; and the principle of separation of powers as preserved by §§ 42 and 43."
"681 So.2d at 1338. *Page 232 
 "Apparently, the majority opinion affirms on the basis that § 12-21-45 violates `the right to trial by jury as guaranteed by Ala. Const. 1901, § 11' and `the constitutional guaranties of equal protection, see §§ 1, 6, and 22.'
 "In my opinion, § 12-21-45 is not unconstitutional for any of the reasons offered by Leahey.
 "Section 6 of the Constitution relates to rights in criminal prosecutions (`That in all criminal prosecutions, the accused has a right to. . .'). Section 12-21-45 has nothing to do with criminal prosecutions. Due process, which is guaranteed in civil trials by § 13 of the Constitution (`that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law'), guarantees a person notice, a hearing according to that notice, and a judgment entered in accordance with the notice and hearing, Ex parte Rice, 265 Ala. 454, 92 So.2d 16 (1957), and restricts the legislature from making unreasonable, arbitrary, and oppressive modifications of fundamental rights. Thompson v. Wiik, Reimer Sweet, 391 So.2d 1016 (Ala. 1980). I fail to see how § 12-21-45 violates the due process guaranty.
 "No remedy that Leahey had was curtailed after the injury had occurred and the right of action vested. Therefore, there was no violation of the right-to-a-remedy portion of § 13. Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939); Henley v. Rockett, 243 Ala. 172, 8 So.2d 852 (1942).
 "Likewise, Ala. Code 1975, § 12-21-45, does not violate the separation of powers doctrine (§§ 42 and 43) of the Constitution of Alabama of 1901. See Ex parte Foshee, 246 Ala. 604, 606-07, 21 So.2d 827
(1945).
 "`The supreme court shall make and promulgate rules governing . . . practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party. . . . These rules may be changed by a general act of statewide application.'"
 "Amendment 328, § 6.11, Constitution of Alabama of 1901.
 "In my opinion, the legislature had the power to enact § 12-21-45. Whether it was expedient or wise for the legislature to enact this statute is not the judiciary's concern. Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 815
(1944)."
Leahey, 681 So.2d at 1347-48 (Houston, J., dissenting) (footnotes omitted).
The strongest obstacle to sustaining § 6-5-545 is the doctrine of stare decisis, given the Leahey case, where, four years ago, a divided Court struck down § 12-21-45, a counterpart of § 6-5-545 that related to civil cases generally. However, when the Constitution is misinterpreted, the doctrine of stare decisis is not entitled to the deference it otherwise receives. In Seminole Tribe of Florida v.Florida, 517 U.S. 44 (1996), the United States Supreme Court stated that, while the doctrine of stare decisis counsels against a reconsideration of precedent, the Court has been particularly willing to reconsider constitutional cases because, in such cases, "`"correction through legislative action is practically impossible."'" Id. at 63 (quotingPayne v. Tennessee, 501 U.S. 808, 828 (1991), in turn quoting Burnet v.Coronado Oil Gas Co., 285 U.S. 393, 407 (1932) (Brandeis, J., dissenting)). See, also, Ex parte Dan Tucker Auto Sales, Inc., *Page 233 718 So.2d 33, 42-43 n. 10 (Ala. 1998) (Lyons, J., concurring specially).
We reject Marsh's invitation to substitute our judgment for the policy- making decision the Legislature made in enacting § 6-5-545. We conclude that § 6-5-545 has not been shown to violate the constitution, and we overrule American Legion Post No. 57 v. Leahey to the extent that case held § 12-21-45, Ala. Code 1975, unconstitutional.[2]
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, See, Brown, and Johnstone, JJ., concur.
England, J., concurs in the result.
Cook, J., concurs in part and dissents in part.
[1] Marsh served the attorney general with a copy of her notice of appeal. See § 6-6-227, Ala. Code 1975; Terry v. City of Decatur,601 So.2d 949 (Ala. 1992).
[2] In Leahey, this Court criticized § 12-21-45 for, among other things, its "apparent attempt to change the law of evidence without expressing the effect on the law of damages." 681 So.2d at 1346. This silence can be viewed as a virtue, not a vice, because it leaves to the courts their historical function of determining the limits of recoverable damages, through an evolving common law. This statutory silence gives both a plaintiff and a defendant latitude to explore various arguments about windfalls. A defendant may desire to argue that reimbursement of the plaintiff for medical expenses already paid by an insurer is a double recovery. On the other hand, a plaintiff may wish to argue that the defendant reaps a windfall unless additional damages are awarded, beyond the mere expense of the insurance or other collateral-source benefits, so as to compensate the plaintiff for having the discipline and foresight to devote money or earning power to paying the expense of acquiring the insurance or other collateral-source benefits rather than paying for some immediate gratification. Any review of matters concerning the validity or permissible effect of such arguments must await a proper case. A verdict form dealing specifically with collateral-source reimbursement would facilitate such a review.